UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

COUNTY OF NIAGARA,                                    **DECISION**
                                                        **and**
                            Plaintiff,                 **ORDER**

            v.

NETHERLANDS INSURANCE COMPANY,
EXCELSIOR INSURANCE COMPANY,                          **14-CV-737A(F)**
T.G.R. ENTERPRISES, INC., and
MICHAEL LOMBARDO,

                            Defendants.
───────────────────────────────

APPEARANCES:          GIBSON, McASKILL & CROSBY, LLP
                      Attorneys for Plaintiff
                      BRIAN P. CROSBY,
                      TIMOTHY J. GRABER,
                      MICHAEL J. WILLETT, of Counsel
                      69 Delaware Avenue, Suite 900
                      Buffalo, New York 14202-3866

                      JAFFE & ASHER
                      Attorneys for Defendants Liberty Mutual, Peerless
                      Insurance, Netherlands Insurance and Excelsior Insurance
                      MARSHALL T. POTASHNER, of Counsel
                      600 Third Avenue, 9th Floor
                      New York, New York 10016

                      DUKE, HOLZMAN, PHOTIADIS & GRESENS, LLP
                      Attorney for Defendant T.G.R. Enterprises
                      HOWARD E. BERGER, of  Counsel
                      701 Seneca Street, Suite 750
                      Buffalo, New York  14210


## JURISDICTION

By order of Hon. Richard J. Arcara filed February 24, 2016, this action was

referred to the undersigned for all pretrial matters.  It is presently before the court on

Defendants Netherlands Insurance Company and Excelsior Insurance Company's

motion to compel and to amend the Scheduling Order, filed January 10, 2017 (Dkt. 37) and Plaintiff County of Niagara's cross-motion to quash a subpoena filed January 26, 2017 (Dkt. 41).

## BACKGROUND

This action, seeking declaratory relief as to coverage under two insurance policies issued by Defendants, was commenced on August 1, 2014 in New York Supreme Court, Niagara County, by filing Plaintiff's complaint seeking declaratory judgment, pursuant to N.Y.C.P.L.R. 3001. The action was removed by Defendants on September 3, 2014 based on this court's diversity jurisdiction. Plaintiff's motion for remand, filed October 1, 2014 (Dkt. 9), was denied upon a Report and Recommendation filed May 24, 2016 (Dkt. 22), *adopted by* 2016 WL 3280367 (W.D.N.Y. June 15, 2016), and Defendants' motion to dismiss was dismissed as moot by order of Judge Arcara on June 15, 2016 (Dkt. 27). Under the First Amended Scheduling Order filed January 18, 2017 (Dkt. 39), all discovery in this matter was to conclude April 28, 2017.

By papers filed January 10, 2017, Defendants moved, pursuant to Fed.R.Civ.P. 37(d) and Fed.R.Civ.P. 45(d) ("Rule 45(d)"), to compel Plaintiff's counsel, Brian P. Crosby's, deposition (Dkt. 37) ("Defendants' motion"), and to extend the time for completion of discovery, disclosure of testifying experts and dispositive motions, attaching Declaration of Marshall T. Potashner In Support Of Motion To Compel And For Discovery Completion (Dkt. 37-1 ("Potashner Declaration") together with Exhibits A-H (Dkt. 37-2 – 37-9) ("Exh(s). ___ to Potashner Declaration"). On January 26, 2017,

Plaintiff filed, pursuant to Fed.R.Civ.P. 26(c) and 45(d)(3), a cross-motion to quash the subpoena and for a protective order (Dkt. 41), together with Memorandum of Law (Dkt. 40-12) ("Plaintiff's Memorandum"). On February 1, 2017, Defendants filed Reply And Opposition Declaration of Marshall T. Potashner (Dkt. 42) ("Potashner Reply Declaration") attaching Exhibits 1-4 (Dkt. 42-1— 42-2) ("Exh(s). __ to Potashner Reply Declaration"). On February 3, 2017, Plaintiff filed a Reply Memorandum Of Law (Dkt. 45) ("Plaintiffs' Reply"). Oral argument was conducted February 8, 2017 (Dkt. 46).

With the court's permission during oral argument, Defendants, on February 12, 2017, filed a Letter providing additional authority in support of Defendants' motion (Dkt. 47) ("Defendants' February 12, 2017 Letter"); on February 14, 2017, Plaintiff filed the Supplemental Declaration of Michael J. Willett, Esq. ("Willett Supplemental Declaration") in further opposition to Defendants' motion and in support of Plaintiff's cross-motion (Dkt. 48) attaching Exhibits A-C ("Exh(s). __ to Willett Supplemental Declaration"). By letter filed February 14, 2017 (Dkt. 49) Plaintiff provided arguments in rebuttal to Defendants' Reply Memorandum ("Plaintiff's February 14, 2017 Rebuttal Letter").


## FACTS[1]

In 2007, Plaintiff contracted with Defendant T.G.R., a general contractor ("T.G.R."), for replacement of windows and doors on buildings located on the campus of Plaintiff Niagara County Community College ("NCCC") on property located in Niagara County, N.Y., owned by Plaintiff Niagara County, a municipality ("the project"). The contract required T.G.R. to obtain liability insurance for T.G.R.'s owned and non-owned vehicles, comprehensive or commercial general liability in the amount of $1 million per

---

[1]   Taken from the pleadings and papers filed in this action.

3

occurrence or $2 million combined bodily injury and property damage naming Niagara County and NCCC as additional insureds, an owners and contractors protective liability policy in the amount of $1 million per occurrence, $2 million aggregate, for Niagara County, as owner of the property, and NCCC, and an umbrella or excess liability policy. In accordance with these requirements, T.G.R. obtained, through an insurance agent, Satellite Agency Network of N.Y., Inc. ("Satellite"), a general commercial liability policy for $1 million, which included coverage for non-owned vehicles for $1 million from Defendant Netherlands Insurance Company ("Netherlands") ("the GCL Policy"), and an umbrella/excessive liability policy for $5 million ("the UE Policy") from Defendant Excelsior Insurance Company ("Excelsior"), for the GCL Policy.  T.G.R. also obtained a $1 million Owner and Contractor's policy for the County, and NCCC and its Board of Trustees ("the Niagara Entities"), from Defendant Excelsior for covered claims which may arise from the project ("the OCP Policy").  The Certificate of Insurance issued by Satellite referenced the GCL and UE Policies for the project and named Niagara County, NCCC, and the project engineer as additional insureds.  Exh. B to Willett Declaration, Dkt. 40-2.  An auto liability insurance policy naming Niagara County as an additional insured was also obtained by T.G.R. from Farm Family Casualty Insurance Company ("Farm Family"), in the amount of $1 million for T.G.R. owned vehicles ("the Farm Family Auto Policy").  The GCL Policy specifies as an exclusion that the policy does not apply to claims for injuries or damages in connection with the use of T.G.R.'s owned autos.  *See* Potashner Declaration ¶ 11 (Dkt. 37-1); Exh. C to Willett Declaration (Dkt. 40-3) at 82.  The UE Policy also excludes any claims for injury arising on the

project from the use of autos owned by T.G.R.  *See* Potashner Declaration ¶ 12 (Dkt. 37-1); Exh. D to Willitt Declaration (Dkt. 40-4) at 6.

On May 27, 2008, Michael Lombardo ("Lombardo"), who was one of T.G.R.'s employees working on the project, was injured while standing in the bed of one of T.G.R.'s flatbed stake trucks loaded with new windows, weighing over 300 pounds each, being moved to a building on NCCC's campus for installation; the windows, unsecured by tie-down straps in violation of N.Y. Labor Law § 241[6] ("§ 241[6]") and related N.Y. State Industrial Code Regulations, fell on Lombardo's right leg causing an extensive fracture and permanent injuries.  Decision of Niagara County Supreme Court (Boniello, J.) dated January 12, 2015, Dkt. 37-2, at 1-2.  Lombardo filed a Notice of Claim against the Niagara Entities on July 18, 2008, Exh. B to Potashner Declaration, Dkt. 37-3; Lombardo's action was commenced in New York Supreme Court, Niagara County on November 10, 2008.  *Id.* Exh. C.  T.G.R. was impleaded on February 25, 2011.  Exh. D to Potashner Declaration, Dkt. 37-5.

On August 7, 2008, Brian Crosby, attorney for the Niagara Entities, wrote a letter to Reseller Risk Management, as Defendants' representative, requesting defense and indemnification for Lombardo's Notice of Claim, Exh. E to Potashner Declaration, Dkt. 37-6 ("the Crosby August 7, 2008 Letter").  After receiving a copy of the Crosby August 7, 2008 Letter, Defendants, on August 18, 2008, sent a letter addressed to T.G.R., with a copy to Crosby, disclaiming coverage under the GCL and UE Policies.  *See* Exh. F to Potashner Declaration, Dkt. 37-7 ("the August 13, 2008 Anderson Letter").  In this letter, Defendants cited to the owned-auto exclusions in both the GCL and UE Policies finding that given Lombardo had been injured in T.G.R.'s truck, no coverage existed under

these policies and therefore disclaimed coverage. *See* Exh. F to Potashner Declaration at 7. On August 22, 2008, Edward J. Anderson responded on behalf of Defendants to the Crosby August 7, 2008 Letter. In his letter, Anderson informed Crosby that T.G.R. had purchased the OCP Policy for the County for the NCCC project and would defend and indemnify the County, NCCC and the Board against the Lombardo claim under the Auto and OCP Policies. Exh. E to Willett Declaration, Dkt. 40-5 ("the Anderson August 22, 2008 Letter"). Plaintiff alleges that the August 22, 2008 Anderson Letter did not disclaim coverage under Defendants' policies and no such formal disclaimer was provided to Plaintiff until 2014. Dkt. 1-3 ¶ 28. The record does not include a copy of such asserted disclaimer.

Before the non-jury trial on the Lombardo action commenced, plaintiff Lombardo stipulated to withdraw his claims against the Niagara Entities. Exh. A to Willett Supplemental Declaration, Dkt. 48, at 8-9. After a non-jury trial, the court found that movement of the windows in T.G.R.'s truck had been directed by Plaintiff Niagara County and that defendants, the Niagara Entities, were responsible for the violation of the applicable N.Y. State Industrial Code provisions. Dkt. 37-2 at 6. Finding Lombardo was free of any comparative negligence, the court awarded a total of $7,250,000 in damages. Following the trial court's verdict dated January 12, 2015, the parties in the Lombardo action, on June 9, 2016, settled the action in the amount of $5,500,000 of which Farm Family paid its Auto Policy limit of $1 million, Excelsior paid $1 million as the limit of its OCP Policy, with a provision that required Niagara County to pay the balance of $3.5 million as follows: $2 million immediately with the balance of $1.5 million to be paid in five annual installments of $300,000 each. Exh. 3 to Potashner

Reply Declaration, Dkt. 42-3 ("the Settlement"). A judgment for $4.5 million pursuant to N.Y.C.P.L.R. 5003-1(a), a(b) and a(e) ("the Judgment"), was entered by Justice Boniello on July 11, 2016.[2] Exh. 2 to Potashner Reply Declaration, Dkt. 42-2. The Judgment was vacated on July 15, 2016 by stipulation of the parties. Exh. C to Willett Supplemental Declaration, Dkt. 48, at 23. Plaintiffs also allege that in response to a discovery request, an attorney for Defendant Excelsior advised, on March 25, 2009, Lombardo's prior counsel that Niagara County was covered by the Excelsior $5 million Excess Policy to the GCL Policy in the Lombardo action against the Niagara Entities. Complaint Exh. G, Dkt. 1-10 at ¶ 5, Exh. F to Willett Declaration, Dkt. 40-6, at 2. Plaintiff alleges such representation estops Defendants from denying coverage under the Netherland's GCL Policy and Excelsior UE Policy for the $3.5 million paid by Niagara County as required by the Settlement. Complaint ¶ 39, Dkt. 1-3, at 9. On January 3, 2017, Defendants issued a subpoena for Crosby's deposition (Exh. G. to Potashner Reply Declaration, Dkt. 37-8); by letter dated January 10, 2017, Crosby's attorney informed Defendants that such deposition would require a court order. *Id.* Exh. H, Dkt. 37-9.

## DISCUSSION

1. <u>Relevancy</u>.

As stated, Background, *supra*, at 2, Defendants issued, pursuant to Fed.R.Civ.P. 45(a), a subpoena to Crosby seeking his testimony in his capacity as an attorney for Niagara Defendants who received a copy of Defendants' disclaimer letters, specifically

---

[2]  The record does not explain the apparent inconsistency between the $5.5 million figure stated in the Settlement and the $4.5 million amount stated in the Judgment.

the August 13, 2008 Anderson letter addressed to T.G.R. with a copy to Crosby and the

August 22, 2008 Anderson Letter to Crosby. Defendants contend that if Crosby

understood the August 13, 2008 Anderson Letter to be a disclaimer by Defendants, that

satisfies the requirements of New York Ins. Law § 3420(d)(2) (requiring prompt

disclaimer by insurers) and thus avoids any coverage by Defendants. *See* Potashner

Declaration ¶¶ 23, 25. In opposition, Plaintiff contends that as under New York law the

effectiveness of a disclaimer is measured by an objective reading of the putative

disclaimer document which must be unambiguous and properly served on the insured,

Crosby's impressions or understanding of the August 13, 2008 Letter are irrelevant to

those dispositive issues, Plaintiff's Memorandum at 7 (citing cases), and thus Crosby's

testimony falls outside the scope of pretrial discovery available pursuant to Fed.R.Civ.P.

26(b)(1) ("Rule 26(b)(1)") which requires that requested discovery be relevant to "a

party's claim or defense" and proportional to the needs of the case." Here, Defendants'

Answer includes that Plaintiff's request for coverage is barred by the owned-auto

exclusion in both the GCL and UE Policies. Answer, Dkt. 24, ¶¶ 60-61.

    In considering a motion to compel an attorney's deposition testimony pursuant to

a Rule 45(a) subpoena, the court at the threshold determines whether such testimony is

relevant to any issues in the case, *see Shaub and Williams, LLP v. Augme*

*Technologies, Inc.*, 2014 WL 1033862, at **4, 5 (S.D.N.Y. Mar. 17, 2014), as lack of

relevancy is a significant factor in determining whether to quash a Rule 45 subpoena on

grounds of undue burdensomeness. *See Cohen v. City of New York,* 255 F.R.D. 110,

117 (S.D.N.Y. 2008) (citing Rule 45(c)(3)(A)(iv) and cases). Because of the risk of

potential "disruptive effect on the attorney-client relationship and the litigation of the

case," such depositions, while not forbidden, are disfavored and require the court determine, *inter alia,* "the need to depose the lawyer." *Shaub and Williams, LLP*, 2014 WL 1033862, at *5 (citing caselaw). Depositions of opposing counsel are disfavored and require weighing several factors including need and "'risk of encountering privilege and work-product issues.'" *Shaub and Williams, LLP,* 2014 WL 1033862, at *5 (quoting *In re: Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003)). The enforceability of Rule 45 subpoenas is subject to the same relevancy prerequisites under Rule 26(b)(1). *See East Point Systems, Inc. v. Maxim*, 2015 WL 1971453, at *2 (D.Conn. Apr. 30, 2015) ("The scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26 (citing *Chamberlain v. Farmington Savings Bank*, 2007 WL 2786421, at **1-2 (D.Conn. Sept. 25, 2007) (same considerations apply to motion to quash subpoena under Rule 26 and under Rule 45), and citing Fed.R.Civ.P. 45 Advisory Committee Notes to 1970 Amendment and 9A Wright and Miller, FEDERAL PRACTICE AND PROCEDURES § 2459)).

Under applicable New York law,[3] for a disclaimer to be effective, such asserted disclaimer must be in writing and addressed to the insured, *see Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi*, 503 N.Y.S.2d 51 (1st Dep't 1986) (reservation of rights letter not effective as disclaimer but insurer's declaratory judgment action was effective as disclaimer by insurer), and pursuant to § 3420(d)(2), the insurer must advise the insured "'with a high degree of specificity of the ground or grounds on which the disclaimer is predicated,'" *Atlantic Cas. Inc. Co. v. Coffey*, 548 Fed.Appx. 661, 663 (2d Cir. 2013) (quoting *Gen. Accident Ins. Grp. v. Cirucci*, 387 N.E.2d 223, 225 (N.Y. 1979)), and must provide "clear notice to insured parties of the precise exclusion that the insurer invokes."

---

[3] The parties do not dispute that New York law is applicable to the substantive issues in this case.

*Atlantic Cas. Ins. Co.*, 548 Fed.Appx. at 664 (citing *Gen. Accident Ins. Grp.*, 387 N.E.2d at 225). Additionally, New York courts require the disclaimer "set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory [§ 3420(d)(2)][4] mandate and purpose." *Id.* Failure to satisfy these requirements results in the disclaimer being determined to be ineffective to avoid coverage. *Id.* at 663 (citing *Estee Lauder Inc. v. OneBeacon Ins. Grp., LLC*, 873 N.Y.S.2d 592, 594–95 (1st Dep't 2009)); *see also Hartford Underwriting Ins. Company v. Greenman-Pederson, Inc.*, 975 N.Y.S.2d 736 (1st Dep't 2013). Notably absent among the criteria applicable to determining the effectiveness of an insurer's purported disclaimer is any reference to the subjective understandings of the insured. Thus, contrary to Defendants' assertion, Dkt. 37-1 ¶ 25 ("If Mr. Crosby was actually aware that coverage was being disclaimed for the County, the disclaimer satisfies the requirement of the N.Y. Ins. Law 340(d) [*sic*]"), New York courts do not assess putative disclaimers based on the awareness of the recipient insured. *See, e.g., Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc.*, 553 N.E.2d 562, 563 (N.Y. 1990) (in finding purported exclusions to violate New York public policy against rental of uninsured vehicles, insured rental agency's understanding that insurer had disclaimed based on the fact that the rented vehicle at issue was not within policy's definitions of covered rental vehicles not considered by courts). Although Defendants contend that Crosby's testimony with regard to the County Defendants' understanding that Defendants had disclaimed coverage would be relevant to whether the disclaimer satisfied § 3420(d)(2), Defendants cite to no authority to support this interesting proposition, and the court's research reveals none. To the contrary, even assuming the contested communication –

---

4   Unless indicated otherwise all bracketed material is added.

the August 13, 2008 Anderson Letter – is arguably ambiguous, as Plaintiff asserts, and thus ineffective to constitute a proper disclaimer, such determination is for the court based on a fair reading of actual text of the document within the four-corner of the document itself, *see QBE Ins. Corp. v. Jinx-Proof, Inc.*, 6 N.E.3d 583 (N.Y. 2014) (despite finding some "contradictory and confusing language" court found insurer's letters to insured "specifically and consistently" stated coverage for assault and battery claims was excluded); *Kass v. Kass*, 696 N.E.2d 174, 179 (N.Y. 1998) ("whether an agreement is ambiguous is a question of law for the courts" (citing *Van Wagoner Adv. Corp. v. S&M Enters.*, 492 N.E. 756, 758-59 (N.Y. 1986)). The court therefore finds Defendants' requested deposition of Crosby seeks irrelevant evidence to the issue of whether Defendants' purported disclaimer under the GCL and related UE policies is valid.

2. <u>Attorney-Work Product</u>.

Alternatively, assuming Defendants' subpoena seeks information relevant to the effectiveness of the August 13, 2008 Anderson Letter as a valid disclaimer, Plaintiff contends the subpoena must be quashed as Defendants' deposition questioning of Crosby would require Crosby to reveal his "mental impressions, conclusions, opinions or legal theories," which are protected from disclosure by Fed.R.Civ.P. 26(b)(3)(A) ("Rule 26(b)(3)(A)"). Plaintiff's Memorandum at 4. Defendants contend such work product protection is no bar to Crosby's requested deposition in this case because until a disclaimer is issued there is no anticipation of litigation, a prerequisite to the application of protection under Rule 26(b)(3)(A). *See United States v. Acquest Transit LLC*, 2017 WL 676280 at *5 (W.D.N.Y. Feb. 21, 2017) (documents "prepared in

anticipation of litigation" to be protected) (quoting Rule 26(b)(3)(A)).  Rule 26(b)(3)(A)

extends work product protection to "'intangible work product as well as what

Fed.R.Civ.P. 26(b)(3) calls documents and tangible things.'"  *Bear Republic Brewing*

*Co. v. Central City Brewing Co.*, 275 F.R.D. 43, 45 (D.Mass. 2011) (deposition

testimony by investigator hired by defendant's attorney of factual material permitted

(quoting *Nesse, etc. v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001) (citing cases)));

*International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 43 (2d Cir. 1975)

(discovery of attorney's thoughts and memories regarding witness interviews is not

allowed under work-product doctrine).  If, however, the requesting party demonstrates a

"substantial need" for the requested information and "cannot without undue hardship

obtain their substantial equivalent by other means" the court may order production.

Fed.R.Civ.P 26(b)(3)(A)(i) ("Rule 26(b)(3)(A)(i)").

    Here, Defendants concede they seek not only "the fact and context of Mr.

Crosby's communications with . . . [Defendants]," Dk. 37-1 ¶ 25, but also contend that if

Crosby "was actually aware that coverage was being disclaimed for . . . [Plaintiff], the

disclaimer satisfies the requirement of N.Y. Ins. Law 340(d)."  *Id.* [*sic*].  That Defendants

consider such awareness or understanding by Crosby with respect to the legal effect of

the August 13, 2008 Anderson Letter to constitute Crosby's "mental impressions" is

supported by Defendants' argument that under Rule 26(b)(3)(A) protections against

disclosure of such mental impressions of counsel do apply only where they are acquired

for, or are the result of the "anticipation of litigation."  Defendants' Reply Memorandum,

Dkt. 42-5, at 10 (citing cases).  *See also* Defendants' Reply Memorandum, Dkt. 42-5 at

13, ("Crosby's conduct <u>and</u> <u>mental</u> <u>impressions</u> at that time were not formed in

anticipation of litigation.").[5]  According to Defendants, until a disclaimer is issued there is

no anticipation of litigation between an insured and insurer, and absent explicit proof of

such anticipated litigation, no work product production attaches to activities by counsel

on behalf of the insured's claim.  *Id.* at 11 (citing cases).  Thus, in this case, there is no

question that Defendants seek to examine Crosby in regard to his legal impression or

understanding of the legal significance of Defendants' putative August 13, 2008

disclaimer, intangible information explicitly protected by Rule 26(b)(3)(A), see

Fed.R.Civ.P. 26(b)(3)(B) (court to protect against disclosure of an attorney's mental

impressions, conclusions, opinions or legal theories"), and therefore, work-product

protection under Rule 26(b)(3)(A) applies unless such impressions, conclusions,

opinions or theories were not formed in anticipation of litigation so as to bring them

within the protection of Rule 26(b)(3)(A).  Defendants also point out that Plaintiff has

failed to provide an affidavit from Crosby averring that the August 2008 litigation with

Defendants was anticipated, Dkt. 42-5 at 13, and that the instant litigation by Plaintiffs

against Defendants was not commenced until 2014, Crosby's impressions, conclusions,

opinions or theories concerning the August 13, 2008 Anderson Letter could not have

been created because litigation with Defendants was then anticipated.  *Id.*  However,

based on the record, the court finds sufficient evidence that Crosby's views, if any,

resulted from the anticipation of litigation based on Lombardo's claim.

　　"At its core, the work-product doctrine shelters the mental processes of the

attorney, providing a privileged area within which he can prepare his client's case."

*United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also Hickman v. Taylor*, 329

U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to

---

[5]  Unless indicated otherwise, underlining added.

enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.")  Thus, to depose Crosby as an attorney who acted for Plaintiff in notifying Defendants of Lombardo's Notice of Claim, a prerequisite to suit against Plaintiffs as municipal entities under New York law, *see* N.Y. Gen. Munic. Law § 50-e, as to Crosby's understanding of the legal significance of Defendants' response to Crosby's request for coverage of the Lombardo claim under the GCL and UE Policies is to seek information quintessentially within the scope of protection afforded by Rule 26(b)(3)(A) to an attorney's impressions, conclusions, opinions or theories.  Additionally, that an attorney's work product serves both a legal and business purpose creates no limitation on the scope of such protection.  *See Acquest*, 2017 WL 676280, at *5 (where created because of the "prospect of litigation" by attorney as a party's agent to facilitate both legal and business decisions, document remains subject to work-product protection) (citing *Adlman*, 134 F.3d at 1202).  Significantly, and contrary to Defendants' contention, Dkt. 42-5 at 11, it is sufficient for Rule 26(b)(3)(A)'s purposes that the requested information arises because of litigation, not a particular litigation, such as in this case a declaratory judgment action seeking coverage against particular insurers as Defendants assert.  *See Adlman*, 134 F.3d at 1202 (work-product protection extends to documents that "can fairly be said to have been prepared or obtained *because of* the prospect of litigation.") (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 FEDERAL PRACTICE & PROCEDURE § 2024 at 343 (1994) (italics in original) (internal quotation marks omitted); *Acquest Transit LLC*, 2017 WL 676280, at *6 (sufficient for work-product protection that requested party's actions anticipated "litigation in some form" against defendants).  Because the text of Rule 26(b)(3)(A) does

not indicate that the nature of the litigation which qualifies as the basis for the creation and protection of work-product be responsive to any particular litigation, "[t]he trend seems to be to apply the protection to documents prepared in anticipation of any litigation, not just the pending action." FEDERAL CIVIL RULES HANDBOOK, Baicker-McKee, Janssen, Corr (2017 Thompson Reuters) at 769-70 (citing caselaw). Here, it is undisputed that in August 2008 when Crosby notified Defendants on behalf of the Niagara Entities as additional insureds under the GCL and UE Policies of Lombardo's accident and the filing of a Notice of Claim against Plaintiffs, Crosby had been retained by Plaintiffs in connection with the Lombardo claim in order to obtain indemnification and a defense under the GCL and UE Policies issued by Defendants to Plaintiff as referenced in Crosby's August 7, 2008 letter. The ascertainment of insurance coverage for a claim against a client is a normal if not required duty of an attorney representing a potential defendant in a civil matter, *Shaya B. Pacific, LLC v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 827 N.Y.S.2d 231, 235-36 (4th Dep't 2006) (citing caselaw), and given that Lombardo's Notice of Claim against Plaintiff was a predictable basis to anticipate a subsequent negligence suit, the record sufficiently establishes that any legal impressions or conclusions Crosby may have formed upon receiving the August 13, 2008 Anderson Letter resulted from a reasonable anticipation of litigation – at that time, the Lombardo action against his clients, the Niagara Entities. Accordingly, that such work-product did not necessarily result at that time from Crosby's belief that coverage litigation against Defendants would eventually become necessary is irrelevant to Plaintiff's right to invoke work-product protection as a ground to quash Defendants' subpoena.

Although, as Defendants argue, Dkt. 42-5 at 11, some caselaw under Rule 26(b)(3)(A) indicates that as between an insurer and insured any anticipation of litigation regarding coverage does not arise until the insurer disclaimed coverage, *see, e.g., Bank Hapoalim, B.M. v. American Home Assurance Co.*, 1993 WL 37506, at *4 (S.D.N.Y. Feb. 8, 1993) (citing caselaw), prevailing authority now holds that work-product protection attaches when the document or intangible information is created in response to <u>any</u> litigation and retains such protection in connection with subsequent litigation at least where the later litigation is related to the earlier suit. *See Cohen,* 255 F.R.D. at 124 (S.D.N.Y. 2008) (citing *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 25 (1983), and other caselaw); *see also Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D.Ga. 2008) ("courts have generally found that documents produced in anticipation of litigating one case remain protected in a subsequent cases if they were created by or for a party to the subsequent litigation"); *Maine v. Morton*, 208 F.Supp.2d 63, 68 (D.Me. 2002) (Rule 26(b)(3)(A) protects materials prepared for *any* litigation or trial so long as they were prepared by or for a party to the subsequent litigation.); *Price v. County of Erie*, 1986 WL 1510 at *2 (W.D.N.Y. Jan. 29, 1986) (same). In the instant case, when confronted with Lombardo's Notice of Claim alleging the Niagara Entities' liability under § 241[6] and given the severity of Lombardo's injuries, *see* Exh. B to Potashner Declaration, Dkt. 37-3 at 4, Crosby reasonably foresaw his clients were faced with potential liability for Lombardo's damages in excess of the $2 million coverage under the Auto and OCP Policies thus causing Crosby to seek out coverage under Defendants' GCL and UE Policies, a motive well-supported by Justice Boniello's later $7,250,000 verdict. Accordingly, the record amply supports that Crosby's August 7,

2008 Letter and his mental reactions to the August 13, 2008 Anderson Letter were generated by a reasonable anticipation of litigation in the Lombardo matter, thus placing such reactions squarely within the scope of work-product protection under Rule 26(b)(3)(A). That Plaintiff now asserts the August 13, 2008 Anderson Letter was an improper disclaimer, contrary to Defendants' contention that Plaintiff could not have anticipated coverage litigation with Defendants until a proper disclaimer was served, does not defeat work-product protection for Crosby's impressions of its legal import upon receipt of the letter as those impressions were formulated in anticipation of the subsequent and imminent litigation by Lombardo against the Niagara Entities. That Defendants' purported disclaimers were not perceived by Plaintiffs for whatever reason to be effective is therefore irrelevant to the question of whether Crosby's testimony sought by Defendants is within the scope of work product protection. Finally, Defendants fail to show any reason in accordance with Rule 26(b)(3)(A)(i) to set aside work-product protection for Crosby's testimony. Specifically, Defendants fail to explain why the information sought could not be provided in response to a contention interrogatory.

3.      <u>Reasonableness of the June 9, 2016 Settlement</u>.

In Defendants' Reply Memorandum Defendants also contend that even if Crosby's deposition testimony regarding the effectiveness of the August 13, 2008 Anderson Letter as a disclaimer of coverage under Defendant Netherland's GCL policy and Defendant Excelsior's UE Policy providing excess coverage limited to the GCL Policy is barred by work-product protections under Rule 26(b)(3), Defendants' subpoena is nonetheless valid and should be enforced as it seeks Crosby's testimony with regard

to the facts — not protected work product — upon which the Settlement was negotiated. *See* Defendants' Reply Memorandum, Dkt. 42-5, at 7-10. Specifically, Defendants argue that, assuming for the sake of analysis, Defendants' improperly disclaimed thus creating coverage under New York law, *see* Discussion, *supra*, at 9-10, Defendants' obligation to indemnify in the case of an insurer which improperly disclaims is limited to settlements that are objectively reasonable. *Id.* at 8 (citing cases). As noted, Facts, *supra*, at 6, the Settlement by the parties to the underlying Lombardo suit against the Niagara Entities was compromised by reducing the trial court's $7.2 million verdict award to $5.5 million and assigning sole responsibility for payment of the Settlement and the Judgment to Plaintiff Niagara County while releasing the Niagara Entities from further liability and, except as to Niagara County, any duty to pay Lombardo. *See* Exh. 3 to Potashner Reply Declaration at 1. According to Defendants, without Crosby's explanation of the rationale for allocating sole responsibility for payment of the balance — $3.5 million — of the agreed settlement amount, presumably reduced in consideration of the requirement to compute to present value, $2 million awarded by Justice Boniello's verdict, Dkt. 41-1 at 9, for Lombardo's future pain and suffering as required by N.Y.C.P.L.R. § 5031, the Settlement is unreasonable as no proportion of the Settlement is allocated to the defendant NCCC and its Trustees, which Defendants assert are not insured under Defendants' GCL and UE Policies, based on their respective proportionate fault. Defendants therefore conclude that unless such allocation is made, and assuming coverage is established, Defendants will be required to indirectly pay the NCCC and Trustees' portions of the Settlement even though, according to Defendants, neither NCCC nor the Trustees were named as additional insureds under the GCL and

UE Policies.  *See* Dkt. 42-5 at 12.  Defendants therefore assert that because NCCC and

the Trustees are non-insureds under Defendants' policies, and thus unable to assert

coverage, Plaintiff Niagara County "configured the settlement" obligating it to pay,

improperly, the entire settlement amount so as to impose upon Defendants

indemnification burdens beyond the coverage provided in Defendants' policies.  Dkt. 42-

5 at 12.  Defendants, therefore, maintain Crosby's deposition is required to ascertain the

factual basis for the structure of the Settlement and amount in order to enable

Defendants to demonstrate the reasonable amount which Defendants may be required

to pay on behalf of Niagara County assuming the disclaimer issue is resolved against

them.  *Id.*  Plaintiff opposes Defendants' alternative ground for requesting the subpoena

be enforced arguing that Crosby's opinion as to the reasonableness of the settlement is

not "probative," and that Defendants should address the question through

interrogatories and a review of documents produced in discovery rather than by

deposing Crosby.  Plaintiff's Reply Memorandum at 8, Dkt. 45 at 8.

As noted, Background, supra, at 3; Facts, *supra*, at 6, following oral argument

Plaintiff submitted to the court copies of transcripts of proceedings before Justice

Boniello prior to the commencement of the non-jury trial of the Lombardo case on

November 14, 2014, which had not been referenced by Plaintiff in Plaintiff's cross-

motion and opposition papers, indicated that Lombardo withdrew his claim against

Plaintiffs NCCC and its Trustees, *see* Dkt. 48 at 8, a fact confirmed in the proceedings

on June 3, 2016 placing the Settlement on the record before Justice Boniello, *see* Dkt.

48 at 15.  Further, Plaintiff submitted a copy of an on-the-record stipulation dated July

15, 2016 vacating the Judgment entered on July 12, 2016.  *See* Dkt. 48 at 23.  Plaintiff

contends, therefore, that based on these post-briefing and argument submissions, Defendants' contention that the Settlement was unreasonable because it was structured to improperly allocate all liability for the Niagara Entities to Niagara County as an additional insured under the GCL and UE Policies only, is without any factual basis. *See* Dkt. 49 at 2. Defendants have not responded to Plaintiffs' supplemental submissions on this issue nor requested permission to do so.

Although an insurer which improperly disclaims may nevertheless seek relief to avoid indemnification for the acts of an uninsured party found liable by way of settlement or judicial determination, *see Pepsico, Inc. v. Continental Casualty Company*, 640 F.Supp. 656, 661 (S.D.N.Y. 1986) (citing *H.S. Equities, Inc. v. Hartford Accident and Indemnity Co.*, 661 F.2d 264, 269 (2d Cir. 1981)), where such uninsured parties are not found liable or dropped from the underlying litigation there is no risk the insurer will be required to indemnify for the actions of such uninsured party based on such litigation or a related settlement. Therefore, because NCCC and its Board of Trustees were no longer defendants in the Lombardo action when Justice Boniello's verdict was rendered,[6] no liability under N.Y. Labor Law § 241(b)[6], which imposes a non-delegable duty and imputed liability upon land owner for injuries to workers on its property resulting from a violation of applicable N.Y. Industrial Code provisions could be imposed against these former parties and it is undisputed that Niagara County was the sole owner of the college campus property where Lombardo was injured. As such, the Settlement terms requiring payment by Niagara County alone establish Defendants' duty (if such duty is the result of the instant action) to indemnify Niagara County as an

---

[6] Why NCCC and the Trustees continued to be included in the caption of the Lombardo state court action and in the text of the Judgment after being withdrawn from the case is not explained in the record.

additional insured under the GCL and UE Policies without risk that such indemnity will include damages resulting from any wrongdoing by uninsured entities.[7]  Accordingly, Defendants' alternative request to enforce the subpoena in order to obtain factual information from Crosby relevant to the reasonableness of the Settlement is lacking in sufficient factual foundation and, as such, is without merit.

4.    Amended Scheduling Order.

As noted, Background, *supra*, at 2, Defendants also moved to amend the current Scheduling Order (Dkt. 39) to extend all remaining dates by sixty days.  Dkt. 37 at 1. Plaintiff does not oppose this request.  Given the necessary delay in resolving the parties' instant motions, good cause exists to amend the Scheduling Order. Accordingly, Defendants' motion to amend the Scheduling Order is GRANTED.


**CONCLUSION**

Based on the foregoing, Defendants' motion (Dkt. 37) is DENIED in part and GRANTED in part; Plaintiff's cross-motion (Dkt. 41) is GRANTED. The parties shall meet and confer and submit, within 10 days of this Decision and Order, either a jointly or individually proposed amended scheduling order for the court's consideration.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Dated:  May 15, 2017
         Buffalo, New York

---

[7]   Contrary to Defendants' assertion, NCCC is an additional insured under Defendants' GCL and UE Policies.  *See* Exh. B to Willett Declaration, Dkt. 40-2, at 1.