**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

COUNTY OF NIAGARA,

                Plaintiff,

        v.                                      14-CV-737-A(F)
                                              **DECISION AND ORDER**

NETHERLANDS INSURANCE COMPANY,
EXCELSIOR INSURANCE COMPANY,
T.G.R. ENTERPRISES, INC., and
MICHAEL LOMBARDO,

                Defendants.
_____

Defendants Netherlands Insurance Company and Excelsior Insurance Company have appealed Magistrate Judge Leslie G. Foschio's Decision and Order (Docket No. 52), which denied their motion to compel the deposition of Plaintiff's counsel, Brian P. Crosby, Esq., and which granted the Plaintiff's cross-motion to quash the Defendants' subpoena for Mr. Crosby's deposition. For the reasons stated below, Judge Foschio's Decision and Order is affirmed.

**DISCUSSION**

The Court recites only those facts relevant to its resolution of this appeal.

This insurance coverage dispute arises out of the "severe and permanent injuries" Michael Lombardo sustained after windows, weighing at least 300 pounds, fell on his leg during a construction project at Niagara County Community College (NCCC). See Docket No. 37-2 at 2-3.

Lombardo filed a complaint in Niagara County Supreme Court against Niagara County, NCCC, and NCCC's Board of Trustees. During the resulting bench trial,

1

Lombardo's attorney announced, in open court, that he and Mr. Crosby—counsel for the defendants in the underlying action—had reached "an accommodation": Lombardo would "drop as [his] targeted defendant Niagara County Community College and its Board of Trustees" in exchange for Niagara County's acknowledgment that it owned the property on which Lombardo had been injured. Docket No. 48 at 8-9. At the end of the trial, Lombardo was awarded $7.25 million in damages. Docket No. 37-2 at 9. Following the verdict, however, the parties agreed to settle the case for $5.5 million, with Niagara County to pay, in total, $3.5 million of that amount. *See* Docket No. 42-3 at 2.

Niagara County then filed the complaint in this case, which seeks a declaratory judgment regarding insurance coverage for the underlying lawsuit and settlement. During discovery, the Defendants issued a subpoena for Mr. Crosby's deposition. *See* Docket No. 37-8. The Plaintiff objected (Docket No. 37-9), the Defendants moved to compel (Docket No. 37), and the Plaintiff filed a cross-motion to quash. *See* Docket No. 41.

Judge Foschio filed a Decision and Order denying the Defendants' motion to compel and granting the Plaintiff's cross-motion to quash. Judge Foschio first concluded that the "Defendants' requested deposition of Crosby seeks irrelevant evidence to the issue of whether Defendants' purported disclaimer under the GCL and related UE policies is valid." Docket No. 52 at 11. In the alternative, Judge Foschio concluded that the subpoena must be quashed because it sought information protected by the attorney work product doctrine. *See id.* at 11-17. And, finally, Judge Foschio

2

rejected the Defendants' "alternative request to enforce the subpoena in order to obtain information from Crosby relevant to the reasonableness of the Settlement." *Id.* at 21.

## DISCUSSION

### 1. Standard of review

A district court may reverse a magistrate judge's non-dispositive order, such as the one at issue here, only when that order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). A non-dispositive order is clearly erroneous "only if," after "considering the entirety of the evidence," the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotation marks omitted). And a non-dispositive order is contrary to law if the order "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quotation marks omitted). "This standard is highly deferential." *Id.* (quotation marks omitted). Thus, a district court may not reject a magistrate judge's non-dispositive order "merely because the [district] court would have decided the matter differently." *Rubin v. Valincenti Advisory Svcs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007).

### 2. The Defendants' arguments on appeal

The Defendants argue that Judge Foschio's Decision and Order is "clearly erroneous or contrary to law" for four reasons. The Court addresses each argument in turn.

First, the Defendants argue that Judge Foschio "erred in determining that former plaintiff Niagara County Community College ('NCCC') qualifies as an additional insured under the policies at issue." Docket No. 54 at 1. This claim is based on a footnote in

3

Judge Foschio's Decision and Order which states that, "[c]ontrary to Defendants' assertion, NCCC is an additional insured under Defendants' GCL and UE Policies." Docket No. 52 at 21 n.7 (citing Docket No. 40-2 at 1, Ex. B).

The Court does not understand Judge Foschio's Decision and Order to have "determin[ed]" that NCCC "qualifies as an additional insured under the policies at issue." Docket No. 54 at 1. Rather, the Court understands Judge Foschio's footnoted observation to be only *dicta*—not, as the Defendants argue, the "law of the case" that might "become collateral estoppel with respect to other potential suits between the parties." Docket No. 58 ¶ 2. Indeed, as the Plaintiff notes (and the Defendants do not dispute), even if Judge Foschio had found that NCCC was an additional insured, "such a determination would not affect the decision on the motions addressed to the proposed deposition of Mr. Crosby." Docket No. 57-1 at 7. Judge Foschio's observation is, then, *dicta*. And because it is *dicta*, it is not, in any sense, the "law of the case." *See McConaghy v. Sequa Corp.*, 294 F. Supp. 2d 151, 160 (D.R.I. 2003) ("[N]ot every statement made or word written by a judge while rendering a decision automatically becomes law of the case. As the United States Supreme Court has recognized, only legal determinations, or rulings of law, are properly regarded as law of the case governing the same issue in subsequent proceedings.") (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)).

Second, the Defendants argue that Judge Foschio erred "to the extent the County is allowed [to] use Mr. Crosby as a witness at the trial of this matter or otherwise submit evidence of their subjective understanding of the disclaimer letter." Docket No. 54 at 3. Trial is, of course, some ways off. If the Plaintiff seeks to introduce such

4

testimony or evidence at trial, the Court can evaluate at that juncture whether the testimony or evidence would be appropriate. *See* Fed. R. Civ. P. 37(c)(1).

Third, the Defendants argue that Judge Foschio "erroneously based a factual determination that NCCC and the Board were discontinued from the underlying action prior to the trial and verdict on materials submitted for the first time on sur-reply." Docket No. 54 at 3. A magistrate judge has broad discretion to direct the filing of, and to consider, sur-replies. *See, e.g.*, *Newton v. City of New York*, 738 F. Supp. 2d 397, 417 n.11 (S.D.N.Y. 2010) ("[C]ourts have broad discretion to consider arguments in a sur-reply.") Assuming that the Defendants did not waive the right to seek review of this issue, the Court easily concludes that Judge Foschio acted well within his discretion by allowing and considering a sur-reply.

Fourth and finally, the Defendants argue that Judge Foschio based his decision on "the erroneous factual determination that 'NCCC and its Board of Trustees were no longer defendants in the Lombardo action when [the underlying] verdict was rendered.'" Docket No. 54 at 4 (quoting Docket No. 52 at 20). In his Decision and Order, Judge Foschio rejected as "without any factual basis" the Defendants' argument that Mr. Cosby's deposition is needed because he helped negotiate the post-verdict settlement in the underlying action. That settlement, as noted, allocated all liability to Niagara County, rather than NCCC and its Board. Docket No. 52 at 20. The Defendants argue that, assuming they improperly disclaimed insurance coverage, they are obligated to indemnify only an objectively reasonable settlement. Docket No. 42-5 at 6. And, as Judge Foshico put it, the Defendants argue "that the settlement was unreasonable because it was structured to improperly allocate all liability for the Niagara Entities to

5

Niagara County as an additional insured under the GCL and UE Policies." Docket No. 52 at 20.

Judge Foschio based his conclusion that the Defendants' argument was "without any factual basis" on transcripts from the underlying action in Niagara County Supreme Court. In those transcripts, Mr. Crosby and Lombardo's counsel agreed that Lombardo would "drop" NCCC and its Board of Trustees "as [his] targeted Defendant[s]." Docket No. 48 at 8. *See also id.* at 15 ("Your Honor, it's my understanding we have a binding accommodation between the plaintiff and the remaining named defendants, which are [sic] Niagara County. And the Court may recall that NCCC was dropped along with the Board of Trustees as defendants by stipulation at the end of the, at the bench trial.").

The Defendants argue, however, that Judge Foschio clearly erred in concluding that NCCC and its Board were "drop[ped]" because, "[u]nder applicable New York State procedural rules, the claims against the NCCC and the Board could have only been discontinued 'by filing with the clerk of the court before the case ha[d] been submitted to the court . . . a stipulation in writing signed by the attorneys of record for all parties', or by Order of the Court." Docket No. 54 at 5 (quoting N.Y. C.P.L.R. §§ 3217(a)(2); 3217(b)). This does not appear to have occurred in the underlying action. Instead, the Defendants note, parts of the record suggest that NCCC and its Board were both "parties to the underlying action at the time of the decision": the court's post-trial decision was against Niagara County, NCCC, and its Board; the release obtained as part of the parties' settlement released claims against NCCC and its Board; and, "[w]hen prompt payment of the settlement was not made, Lombardo obtained a judgment against the County, NCCC, and the Board." Docket No. 54 at 5-6 (citing

6

Docket Nos. 42-1, 42-2, & 42-3 at 2). Based on these facts, the Defendants argue that they seek Mr. Crosby's deposition, not regarding his "explanation of the rationale for allocating sole responsibility" to Niagara County, but regarding his "oral and written communications with Lombardo's counsel." Docket No. 54 at 6. "These communications," the Defendants argue, "provide non-privileged evidence concerning the facts and circumstances leading to the settlement, including any discontinuance of the claims against NCCC and the Board as part of some sort of *quid pro quo*." *Id.*

Whether NCCC and its Board were, in fact, dismissed from the underlying lawsuit before judgment is not entirely clear. As an initial matter, whether or not Mr. Crosby affirmatively "bless[ed]" Lombardo's counsel's proposal to "drop" NCCC and its Board as defendants, Docket No. 48 at 8, his intent to do so was clear. During trial in the underlying action, Lombardo's counsel informed the court that he would "drop as . . . targeted defendant[s]" NCCC and its Board "[i]n return" for Mr. Crosby's "acknowledg[ment] that Niagara County owned the property on which the accident occurred for purposes of New York Labor Law § 241(6). *Id.* Mr. Crosby responded that "the County does agree that they are the owner in fee of the campus, the land, parking lots and all of the buildings, including the building where the work was being performed at the time." *Id.* at 9. In other words, Mr. Crosby acknowledged and agreed to the condition upon which Lombardo would "drop" NCCC and its Board as defendants in the underlying action. Mr. Crosby's intent to be bound by Lombardo's counsel's agreement was crystal clear, even if he did not affirmatively and expressly stipulate to the agreement's terms. Indeed, the parties' understanding that NCCC and its Board had

7

been dismissed was reaffirmed, without objection, when the parties' settlement was later placed on the record. *Id.* at 15.

"Where, as here, an oral stipulation is made by counsel in open court within the mandates of C.P.L.R. § 2104,[1] it will be strictly enforced and a party will be relieved from the consequences of same 'only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident.'" *Javarone v. Pallone*, 234 A.D. 814, 815 (3d Dep't 1996) (quoting *Hallock v. State of New York*, 64 N.Y.2d 224, 230) (brackets omitted) (reversing decision to vacate oral stipulation of discontinuance). *See also Hanna v. Ford Motor Co.*, 252 A.D. 2d 478, 479 (2d Dep't 1998) ("Notwithstanding the failure of the stipulation to conform to CPLR 3217, it was intended to release Ford from the action and constitutes a release within the meaning of General Obligations Law § 15-108.") Although a stipulation of discontinuance that conformed with C.P.L.R. § 3217 would, of course, have been a more prudent way to memorialize the parties' agreement, the "integrity of the litigation process" depends on "strict enforcement" of open-court stipulations. *Hallock*, 474 N.E. 2d at 1180. It is for that reason that open-court stipulations are "not lightly cast aside." *Id.* The parties' agreement in the underlying action to "drop" NCCC and its Board would, therefore, appear to be binding, notwithstanding its failure to comply with C.P.L.R. § 3217.

The wrinkle, as the Defendants observe, is that several post-discontinuance documents suggest that NCCC and its Board remained defendants in the case. Specifically, the Decision Following Nonjury Trial entered "judgment against the

---

[1] C.P.L.R. § 2104 provides as follows: "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation shall be filed by the defendant with the county clerk."

8

Defendants"—which, according to the decision's caption, included NCCC and its Board (Docket No. 37-2); the release executed after the parties' settlement released claims against NCCC and its Board (Docket No. 43-2 at 2); and, following the parties' settlement, Lombardo obtained a judgment against Niagara County, NCCC, and the Board. Docket No. 42-2.

Judge Foschio noted these inconsistencies in his Decision and Order (*see* Docket No. 52 at 20 n.6), and he resolved them by finding that NCCC and its Board were, in fact, discontinued from the underlying action. Judge Foschio made his decision by relying on the transcripts from the underlying action, which, as noted, show the parties' clear intent to discontinue the underlying case against NCCC and its Board. Although parts of the record support the Defendants' position, the record also quite comfortably supports Judge Foschio's resolution of the factual issue. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Thus, Judge Foschio's finding was not clearly erroneous.

The Defendants acknowledge that their final argument on appeal is premised on concluding that Judge Foschio's factual determination was clearly erroneous. Docket No. 54 ¶ 9. Because that finding was not clearly erroneous, the Defendants' final argument is without merit.[2]

---

[2] The Defendants also argue that Judge Foschio "erred in making a substantive finding on a discovery motion." Docket No. 54 ¶ 10. Defendants do not explain, however, how Judge Foschio could have resolved the parties' discovery dispute without first deciding whether, for purposes of his decision, NCCC and its Board were dismissed from the underlying lawsuit. And, in any event, Judge Foschio's finding is not a factual determination that forever binds the parties. *See DeSmeth v. Samsung America*, No. 92 CIV. 3710 SHSRLE, 1998 WL 315469, at *2 (S.D.N.Y. June 16, 1998) ("Discovery, by its definition, is a search for relevant information. Rule 26 of the Federal Rules of Civil Procedure is clearly much more liberal than the Federal Rules of Evidence which govern admissibility. Trial judges may admit or preclude the evidence produced during discovery. [Defendant] cites no authority which obligates a trial judge to

## CONCLUSION

For the reasons stated above, Judge Foschio's Decision and Order (Docket No. 52) is affirmed. This matter is recommitted to Judge Foschio for further proceedings consistent with the referral order already in place.

**SO ORDERED.**


Dated: September 7, 2017        _s/Richard J. Arcara_
     Buffalo, New York                HONORABLE RICHARD J. ARCARA
                                UNITED STATES DISTRICT JUDGE

---

accept factual determinations made during discovery. The factual determinations on which a discovery decision is based are not admissible. Samsung's fears to the contrary are unfounded.")  *Cf. Univ. of Tx. V. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.")