UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COUNTY OF NIAGARA,
NIAGARA COUNTY COMMUNITY COLLEGE, and
BOARD OF TRUSTEES – NIAGARA COUNTY
 COMMUNITY COLLEGE,

|  |  |
|---|---|
| Plaintiffs, | REPORT |
| | and |
| v. | RECOMMENDATION |

LIBERTY MUTUAL INSURANCE COMPANY,                    14-CV-737A(F)
PEERLESS INSURANCE COMPANY,
NETHERLANDS INSURANCE COMPANY,
EXCELSIOR INSURANCE COMPANY,
T.G.R. ENTERPRISES, INC., and
MICHAEL LOMBARDO,

                                   Defendants.
_____

APPEARANCES:            GIBSON, McASKILL & CROSBY, LLP
                        Attorneys for Plaintiffs
                        BRIAN P. CROSBY,
                        TIMOTHY J. GRABER, and
                        MICHAEL J. WILLETT, of Counsel
                        69 Delaware Avenue
                        Suite 900
                        Buffalo, New York  14202-3866

                        JAFFE & ASHER, LLP
                        Attorneys for Defendant Insurance Companies
                        MARSHALL T. POTASHNER, of Counsel
                        600 Third Avenue
                        9th Floor
                        New York, New York  10016

                        DUKE, HOLZMAN, PHOTIADIS & GRESENS, LLP
                        Attorneys for Defendant T.G.R. Enterprises, Inc.
                        HOWARD E. BERGER, of Counsel
                        701 Seneca Street
                        Suite 750
                        Buffalo, New York  14210

## JURISDICTION

On December 24, 2016, this case was referred to the undersigned by Honorable Richard J. Arcara, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on motions for summary judgment filed February 15, 2018 by Defendants Excelsior Insurance Company and Netherlands Insurance Company (Dkt. 78), and February 16, 2018, by Plaintiff County of Niagara (Dkt. 79).

## BACKGROUND

On August 1, 2014, Plaintiffs County of Niagara ("the County"), Niagara County Community College ("NCCC"), and Board of Trustees – Niagara County Community College ("the Board") (together, "Plaintiffs"), commenced this declaratory judgment action in New York State Supreme Court, Niagara County, seeking a declaration that one or more of the defendant insurance companies is obligated to defend and indemnify the County in a personal injury action commenced on November 10, 2008, in New York Supreme Court, Niagara County, by Defendant Michael Lombardo ("Lombardo"), seeking to recover for personal injuries Lombardo sustained on May 27, 2008, while performing work for his employer, Defendant T.G.R. Enterprises, Inc. ("TGR"), pursuant to a contract between TGR and Plaintiffs.  On September 3, 2014, Defendants Netherlands Insurance Company ("Netherlands"), Excelsior Insurance Company ("Excelsior"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Peerless Insurance Company ("Peerless") ("Defendant Insurers"), pursuant to 28 U.S.C. § 1441, removed the action to this court, citing diversity of citizenship under 28 U.S.C. § 1332 as

the basis for jurisdiction.  On June 15, 2016, Plaintiffs' motion to remand (Dkt. 9) was

denied (Dkt. 27), and discovery ensued.

On February 15, 2018, Defendants Excelsior and Netherlands (together,

"Defendants"), filed a motion for summary judgment (Dkt. 78) ("Defendants' Motion"),

attaching Netherlands and Excelsior's Statement of Undisputed Facts Submitted

Pursuant to Fed.R.Civ.P. 56(c) and Local Rule 56 (Dkt. 78-1) ("Defendants' Statement

of Facts"), the Declaration of Cass Cossairt (Dkt. 78-2) ("Cossairt Declaration"), exhibits

1 through 4 (Dkts. 78-3 through 78-6) and 5 through 13 (Dkts. 78-8 through 78-16)

("Defendants' Exh(s). __"), the Declaration of Marshall T. Potashner, Esq. (Dkt. 78-7)

("Potashner Declaration"), and the Memorandum of Law in Support of Netherlands

Insurance Company and Excelsior Insurance Company's Motion for Summary

Judgment (Dkt. 78-17) ("Defendants' Memorandum").  On February 16, 2018, Plaintiff

County of Niagara filed a motion for summary judgment (Dkt.79) ("Plaintiff's Motion"),

attaching the Declaration of Michael J. Willett, Esq. (Dkt. 79-1) ("Willett Declaration"),

the Statement of Material Facts Pursuant to Local Rule 56(a)(1) (Dkt. 79-2) ("Plaintiff's

Statement of Facts"), Plaintiff's Appendix of exhibits (Dkt. 79-3), a volume of exhibits A

through OO (Dkt. 79-4) ("Plaintiff's Exh(s). __"),[1] and a Memorandum of Law (Dkt. 79-5)

("Plaintiff's Memorandum").

On April 6, 2018, Defendant Excelsior filed Excelsior's Response to Plaintiff's

Statement of Material Facts Pursuant to Local Rule 56 (Dkt. 85) ("Excelsior's Statement

of Facts Response"), and a Memorandum of Law in Opposition to Plaintiff's Motion for

---

[1] Because Plaintiff's exhibits are filed in a single volume containing 744 pages, in the interest of clarity, references to individual exhibits are to the specific pages of Dkt. 79-4, rather than to the specific pages of the relevant exhibits.  Where available, references to Bates numbers are also included.

Summary Judgment (Dkt. 86) ("Defendants' Response").  Also filed on April 6, 2018,

were the Declaration of Michael J. Willett, Esq. (Dkt. 87) ("Willett Declaration"), a

Memorandum of Law (Dkt. 87-1) ("Plaintiff's Response"), and the Response of Plaintiff,

County of Niagara, to the Statement of Undisputed Facts of Defendants, Netherlands

Insurance Company and Excelsior Insurance Company (Dkt. 87-2) ("Plaintiff's

Statement of Facts Response").

On April 19, 2018, Plaintiff filed in further support of summary judgment a Reply

Memorandum of Law (Dkt. 88) ("Plaintiff's Reply").  On April 20, 2018, Defendants filed

the Reply Memorandum of Law in Further Support of Netherlands Insurance Company

and Excelsior Insurance Company's Motion for Summary Judgment (Dkt. 89)

("Defendants' Reply").  With leave of the court (Dkt. 94), Plaintiff, on May 18, 2018, filed

a Sur-Reply Memorandum of Law (Dkt. 95) ("Plaintiff's Sur-Reply"), and Defendants, on

May 21, 2018, filed Netherlands Insurance Company and Excelsior Insurance

Company's Response to Sur-Reply (Dkt. 96) ("Defendants' Sur-Reply").  Oral argument

was deemed unnecessary.

Based on the following, Plaintiff's Motion should be DENIED; Defendants' Motion

should be GRANTED.


## **FACTS**[2]

**The Project and Agreement**

On November 7, 2007, Plaintiff County of Niagara ("Plaintiff" or "the County"), as

"Owner," entered into an agreement ("the Contract")[3] with Defendant T.G.R.

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] A copy of the Contract is filed as Plaintiff's Exh. A (Dkt. 79-4 at 1-83).

Enterprises, Inc. ("TGR"), as "Contractor," for the replacement of windows and doors at Plaintiff Niagara County Community College ("NCCC"), identified as Project No. EPN 0513-A ("the Project").  Pursuant to § 2.5.01 of the Contract, TGR was required to procure and maintain insurance and provide as evidence a certificate of insurance demonstrating the requisite insurance was obtained, including, as relevant here, automobile ("Auto"), commercial general liability ("CGL"), owner's and contractor's protective liability ("OCP"), and excess/umbrella liability ("E/U"), and to name the County as an additional insured on all insurance policies.  A "Hold Harmless Clause" in the Contract provides the Contractor agrees to defend and indemnify the County and NCCC, and their officers, agents and employees, and to "hold them harmless from any and all risks of every kind, nature and description resulting from or arising out of the work and/or service performed by the Contractor, or his subcontractors," under the Contract.  Contract § 2.5.12.  Accordingly, TGR obtained several insurance policies and the required certificate ("Insurance Certificate")[4] showing TGR procured commercial general liability insurance Policy No. CBP 8206669 ("CGL Policy")[5] issued by Defendant Netherlands Insurance Company ("Netherlands"), excess/umbrella Policy No. CU 8209770 ("E/U Policy")[6] issued by Defendant Excelsior Insurance Company ("Excelsior"), and owner's and contractor's protective liability Policy No. GL 8350407 ("OCP Policy")[7] issued by Excelsior.  Although not listed on the Insurance Certificate,

---

[4] Plaintiff's Exh. B (Dkt. 79-4 at 84-85).
[5] Defendants' Exh. 1 (Dkt. 78-3); Plaintiff's Exh. D (Dkt. 79-4 at 147-283).  The copy filed by Defendants appears to be from the previous year and, although the portions relevant here are essentially the same in substance to the policy in effect from October 24, 2007 to October 24, 2008, there is some variance in page numbers and section designations.  Because of this discrepancy, further references to the CGL Policy are to the copy filed by Plaintiff.
[6] Defendants' Exh. 2 (Dkt. 78-4); Plaintiff's Exh. E (Dkt. 79-4 at 284-350).
[7] Plaintiff's Exh. C (Dkt. 79-4 at  86-146).

TGR also procured a Business Auto Policy No. 3115C1352 ("Auto Policy")[8] issued by

non-party Farm Family Casualty Insurance Company ("Farm Family").

**Insurance Policies**

    **CGL Policy**

    The CGL Policy, issued by Defendant Netherlands for the period 10/24/2007 to

10/24/008, names TGR as the insured and the County as an additional insured, and

limits coverage to $ 1 million for each occurrence.  The CGL Policy includes, *inter alia*, a

Commercial General Liability Coverage Part ("Commercial GL Part") and a Commercial

Auto Coverage Part ("Commercial Auto Part").  The CGL Policy's Commercial GL Part

specifies Netherlands

> will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies.

CGL Policy § 1.a (Dkt. 79-4 at 259).

The CGL Policy's Aircraft, Auto, Or Watercraft Exclusion ("AAW Exclusion"), excludes

from coverage bodily injury "arising out of the ownership, maintenance, use or

entrustment to others of any . . . 'auto' . . . ,"  CGL Policy Coverages Exclusions, § I.2.g,

AAW Exclusion (Dkt. 79-4 at 262), with "auto" defined to include "a land motor vehicle,

trailer or semitrailer designed for travel on public roads, including any attached

machinery or equipment."  CGL Policy – Definitions § V.2 (Dkt. 79-4 at 270).

    The CGL Policy's Commercial Auto Part provides Netherlands

> will pay all sums an "Insured" legally must pay as damages because of "bodily
> injury" or "property damage" to which this insurance applies, caused by an

---

[8] Defendants' Exh. 9 (Dkt. 78-12).

"accident" and resulting from the ownership, maintenance or use of a covered "auto."

CGL Policy, Business Auto Coverage Form, Liability Coverage § 2.A (Dkt. 79-4 at 205). As relevant to the Commercial Auto Part, there are two categories of "covered 'autos'" including "hired 'autos' only" and "non-owned 'autos' only," with both terms specifically defined. CGL Policy, Business Auto Coverage Form, Description of Covered Auto Designation Symbols 8 and 9 (Dkt, 79-4 at 204).

### E/U Policy

The E/U Policy issued by Excelsior, for the period October 24, 2007 to October 24, 2008, names TGR as the insured with the County an additional insured, and limits coverage to $ 5 million for each occurrence. The E/U Policy provides for excess insurance coverage for claims for which coverage is provided pursuant to the CGL Policy. E/U Policy, Schedule of Underlying Insurance[9] (Dkt. 79-4 at 303). Excluded from insurance coverage under the E/U Policy's Owned-Auto exclusion ("Owned-Auto Exclusion"),[10] is any injury or damage arising out of, *inter alia*, "autos" owned by TGR, with "autos" specifically defined as.

> those "autos" you own and any trailer you do not own while attached to power units you own. This includes those "autos" you acquire ownership of after the policy begins.

E/U Policy, Owned-Auto Exclusion (Dkt. 79-4 at 305).

The Owned-Auto Exclusion further provides that

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of "autos" designated in the Schedule. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or

---

[9] Neither the Farm Family Policy nor the OCP Policy is listed on the Schedule of Underlying Insurance.
[10] E/U Policy New York Changes Endorsement (Dkt. 79-4 at 305).

> "property damage", of the "offense" which caused the "personal and advertising injury", involved the ownership, maintenance, use or entrustment of others of any "auto" that is designated in the Schedule.

*Id.*

The E/U Policy also specifies that

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

E/U Policy, Commercial Umbrella Liability Coverage Form (Dkt. 79-4 at 320).

### OCP Policy

The OCP Policy issued by Defendant Excelsior Insurance Company

("Excelsior"), for the period 11/20/2007 to 11/20/2008, names the County as the

insured, and limits coverage to $ 1 million for each occurrence.

### Auto Policy

The Auto Policy issued by Farm Family for the period 10/24/2007 to 10/24/008,

names TGR as the insured, and limits coverage to $ 1 million for each accident.

### The Accident

On May 27, 2008, while working on the Project, Defendant Michael Lombardo

("Lombardo"), a TGR employee, and co-worker Ralph Rose ("Rose"), used a stake

truck[11] owned by TGR ("the truck"), to move windows for installation in NCCC's Student

Center located on NCCC's campus at 311 Saunders Settlement Road in Sanborn,

County of Niagara, New York.  Rose drove the truck while Lombardo rode in the truck's

cargo bed where the windows, which were not secured to the truck, shifted and fell on

---

[11] A "stake truck" is a flat bed truck with sockets along the edge for placement of upright stakes to form a fence, offering a variety of options for hauling cargo, including large, odd-shaped loads.

Lombardo ("the accident"), resulting in injuries to Lombardo's right leg including, *inter alia*, fractures of his right tibia and fibula requiring surgery, and injuries to the tendons of his right foot, also requiring surgical repair, and causing recurrent deep venous thrombosis and chronic pain.

**Notice of Claim, Disclaimer, and State Court Action**

On July 18, 2008, Lombardo served the County with a Notice of Claim ("Notice of Claim"),[12] alleging personal injury based on the negligence of the County, NCCC and the Board of Trustees of NCCC ("the Board"), as well as violations of New York Labor Law ("N.Y. Labor Law") §§ 200 and 241[6]. The Notice of Claim does not specifically attribute any negligence or fault for the accident to TGR. By letter dated August 7, 2008 ("August 7, 2008 Letter"),[13] Brian P. Crosby, Esq. ("Crosby"), as attorney for the County, NCCC, and the Board ("Niagara Entities"), advised Suzanne H. Amo ("Amo") of Reller Risk Management ("Reller Risk"), of the Notice of Claim, referenced TGR's CGL and E/U Policies, and demanded indemnification and defense for any loss to the Niagara Entities arising from the accident. Amo forwarded the demand to Defendant Peerless Insurance Company ("Peerless").[14] By letter to TGR dated August 13, 2008 ("Disclaimer Letter"),[15] with copies to Amo, Crosby, and Lombardo's then attorney, one Edward J. Anderson ("Anderson"), a Claims Analyst with Peerless, advised coverage for

---

[12] Filed as Plaintiff's Exh. H (Dkt. 79-4 at 400-05).
[13] Filed as Plaintiff's Exh. I (Dkt. 79-4 at 406-19).
[14] Both Netherlands and Excelsior are wholly-owned by Peerless, which is wholly-owned by Defendant Liberty Mutual Insurance Group. *See* Fed.R.Civ.P. 7.1 Statement (Dkt. 1-23).
[15] Filed as Plaintiff's Exh. L (Dkt. 79-4 at 427-34).

the accident was denied under the CGL Policy based on the AAW Exclusion and under

the E/U Policy based on the Owned-Auto Exclusion.

Specifically, the Disclaimer Letter states it is in reference to a coverage

investigation pertaining to Lombardo's Notice of Claim asserted against the Niagara

Entities, and the CGL and E/U Policies, relative to the May 27, 2008 accident at NCCC.

Disclaimer Letter at 1 (Dkt. 79-4 at 428).  The Disclaimer Letter briefly describes the

accident as TGR employee Lombardo being injured while working at the NCCC

worksite ("the worksite"), while "standing in the bed of a stake rack truck" owned by

TGR and operated by a TGR employee, "when the windows in the bed of the truck

shifted and fell, fracturing Mr. Lombardo's leg."  *Id.*  In disclaiming coverage, Peerless

explains

> We have reviewed both the Commercial General Liability Coverage Form,
> pursuant to policy number CBP 8206669, issued by the Netherlands Insurance
> Company as well as the Commercial Umbrella Liability Form, pursuant to policy
> number CU 8209770, issued by the Excelsior Insurance Company, and must
> inform you that this incident is not covered by either coverage form.

Disclaimer Letter at 1 (Dkt. 79-4 at 428).

The Disclaimer Letter also quotes the relevant CGL Policy AAW Exclusion, *id.* at

2 (Dkt. 79-4 at 429), and the E/U Policy Owned-Auto Exclusion, *id.* at 6 (Dkt. 79-4 at

433), reiterating that

> Because the accident involving Mr. Lombardo arose out of the operation of a
> stake truck that was owned by T.G.R. Enterprises, Inc., and operated by a T.G.R.
> Enterprises, Inc. employee, there is no coverage under the Commercial General
> Liability or Commercial Umbrella Liability Coverage form for the incident.

*Id.* at 6 (Dkt. 79-4 at 433).

Despite disclaiming coverage for the accident under the CGL and E/U Policies,

Anderson further advised coverage may be available under the OCP Policy, and that a

new claim under that policy had been established. Disclaimer Letter at 1, 7 (Dkt. 79-4 at 428, 434).

By letter to Crosby dated August 22, 2008 ("August 22, 2008 Letter"),[16] Anderson advised he was responding to Crosby's August 7, 2008 Letter to Amo. Anderson stated a claim had been set up under the OCP Policy purchased by TGR "for the window installation project at the Niagara County Community College job site . . . to address the Notice of Claim filed on behalf of Michael Lombardo." *Id.* at 436. Anderson further advised that through the OCP Policy, Peerless would defend and indemnify the Niagara Entities for this loss. *Id.* The August 22, 2008 letter does not disclaim coverage under any policy. By letter dated September 3, 2008 ("September 3, 2008 Letter"),[17] Anderson advised Crosby that Peerless had retained the law Offices of Lawrence M. Rubin, Esq. ("Rubin law firm"), in connection with the Notice of Claim and would represent Excelsior at a deposition of Lombardo scheduled for September 8, 2008, with regard to the Notice of Claim. On November 10, 2008, Lombardo, represented by Samuel J. Capizzi, Esq. ("Capizzi"), of Brown Chiari, LLP ("Brown Chiari"), commenced a personal injury action in New York Supreme Court, Niagara County, naming the Niagara Entities, but not TGR, as defendants ("state court action").

By letter dated March 25, 2009 ("March 25, 2009 Letter"),[18] the Rubin law firm advised Capizzi that under the OCP Policy, Niagara was insured for $ 1 million, and that Niagara and NCCC were named as additional insureds under the CGL Policy with a $ 1 million limit, as well as under the E/U Policy with a $ 5 million limit.

---

[16] Plaintiff's Exh. M (Dkt. 79-4 at 435-37).
[17] Plaintiff's Exh. N (Dkt. 79-4 at 438-40).
[18] Plaintiff's Exh. P. (Dkt. 79-4 at 447-49).

Case 1:14-cv-00737-FPG-LGF    Document 97    Filed 01/03/19    Page 12 of 49


Through correspondence with Lombardo's legal counsel in the state court action, the Niagara Entities learned in April 2010, that the County and NCCC were named as additional insureds to the CGL Policy, the E/U Policy, and the OCP Policy.

On February 21, 2011, the Niagara Entities brought in the state court action a third-party claim against TGR ("Third Party Complaint"),[19] for indemnification and contribution as to any judgment Lombardo may obtain against the Niagara Entities in the state court action.  Prior to trial, the state court action was dismissed as against NCCC and the Board, leaving only the County as a defendant.  Pursuant to the Auto Policy, Farm Family provided the County with a defense to the state court action.

Brian P. Fitzgerald, P.C. ("Fitzgerald law firm") replaced the Rubin law firm as counsel for the Niagara Entities in the state court action.[20]  By letter dated February 4, 2014 ("February 4, 2014 Letter"),[21] Crosby was advised by the Fitzgerald law firm that the County was a named insured on the OCP Policy, and an additional insured on the CGL Policy, the E/U Policy, and the Auto Policy, with the four policies providing a total of $ 7 million, cautioning that "I am not 100% certain that this coverage is actually going to be provided and am still working on that."  February 4, 2014 Letter at 1 (Dkt. 79-4 at 451).  Fitzgerald continued that TGR carried $ 6 million in employer's liability coverage and when combined with the $ 7 million coverage under the four policies, the total coverage was $ 13 million, which a verdict possibly could exceed.  *Id.* at 1-2 (Dkt. 79-4 at 451-52).

---

[19] Defendants' Exh. 8 (Dkt. 78-11).
[20] The precise date the Fitzgerald law firm replaced the Rubin law firm is not in the record.
[21] Plaintiff's Exh. Q (Dkt. 79-4 at 450-52).

In a June 17, 2014 e-mail ("June 17, 2014 e-mail"),[22] to Steven E. Peiper, Esq. ("Peiper"), coverage counsel for Excelsior and Netherlands, Fitzgerald advised the County demanded coverage under the OCP, CGL, and E/U Policies, adding although Peerless, in the August 22, 2008 Letter, acknowledged coverage to the County under the OCP Policy, coverage under the CGL and E/U Policies had never been disclaimed, such that the County is entitled to the requested coverage.  June 17, 2014 e-mail at Bates Peerless 151-52 (Dkt. 79-4 at 455-56).  In a June 18, 2014 e-mail ("June 18, 2014 e-mail"),[23] Peiper responded that the August 13, 2008 Disclaimer Letter constituted a disclaimer of coverage to the Niagara Entities under both the CGL and E/U Policies, quoting portions of the Disclaimer Letter which Peiper maintains can only be construed as notifying coverage for the accident was available only under the OCP Policy.

By letter dated June 18, 2014 ("June 18, 2014 Letter"),[24] Peiper stated to Fitzgerald and Howard E. Berger, Esq. ("Berger"), he had been "retained as coverage counsel to Peerless/Netherlands/Excelsior/Liberty Mutual relative to [the state court action],"[25] and was clarifying Liberty Mutual's coverage position with regard to the CGL and E/U Policies.  Quoted in the June 18, 2014 letter are both the CGL Policy's AAW Exclusion that was also quoted in the Disclaimer Letter, as well as the E/U Policy's Owned-Auto Exclusion that was omitted from the Disclaimer Letter.  Peiper further wrote the Disclaimer Letter "clearly advised" both TGR and the Niagara Entities no

---

[22] Plaintiff's Exh. R (Dkt. 79-4 at 455-56).
[23] Plaintiff's Exh. R (Dkt. 79-4 at 454-55).
[24] Plaintiff's Exh. R (Dkt. 79-4 at 457-69).
[25] Unless otherwise specified, bracketed material has been added.

coverage is available under the E/U Policy for injuries Lombardo sustained in the

accident as

> There is no dispute that the incident arose out of a vehicle owned by TGR.
> Accordingly, by the plain terms of the umbrella policy, there is no coverage for
> either TGR or [the Niagara Entities] for the incident involving Michael Lombardo.

June 18, 2014 Letter at 11 (Dkt. 79-4 at 743).

With regard to a settlement conference scheduled in the state court action for

June 24, 2014, before New York Supreme Court Justice, Niagara County Ralph A.

Boniello, III ("Justice Boniello"), which all insurance representatives and adjustors with

authority to settle the state court action were to attend, *see* Plaintiff's Exh. T (Dkt. 79-4

at 470-41), one Cynthia Pasternak-Giocondo ("Pasternak-Giocondo"), Senior Technical

Claims Specialist with Liberty Mutual, advised Fitzgerald by letter dated July 22, 2014

("July 22, 2014 Letter"),[26] it was Liberty Mutual's position that it would not be

contributing toward any settlement in the state court action, that Liberty Mutual had

disclaimed coverage to TGR and the Niagara Entities under the CGL and E/U Policies,

and was standing by the disclaimers.

By letter to Fitzgerald dated July 23, 2014 ("July 23, 2014 Letter"),[27] Marshall T.

Potashner ("Potashner"), advised that Jaffe & Asher, LLP ("Jaffe & Asher"), now

represented Netherlands and Excelsior, and that because neither NCCC nor the Board

was a party to the Contract between the County and TGR, neither NCCC nor the Board

qualified as an insured under the CGL or E/U Policy.  July 23, 2014 Letter at 1-2 (Dkt.

79-4 at 529-30).  Potashner continued that the August 13, 2008 Disclaimer Letter timely

---

[26] Plaintiff's Exh. U (Dkt. 79-4 at 472-43).
[27] Plaintiff's Exh. X (Dkt. 79-4 at 528-31).

disclaimed coverage on behalf of Netherlands and Excelsior as to all three Niagara Entities. *Id.* at 2-3 (Dkt. 79-4 at 530-31).

Pasternak-Giocondo attended the July 24, 2014 settlement conference and, in response to Justice Boniello's inquiry whether she was interested in contributing $ 500,000 toward settlement, Pasternak-Giocondo declined because Liberty Mutual "has a solid disclaimer." Plaintiff's Exh. V at 33-34 (Dkt. 79-4 at 81). Pasternak-Giocondo did not attend any further settlement conferences and no money toward settlement was ever offered under the CGL Policy, *id.* at 39 (Dkt. 79-4 at 486), nor did anyone acting on behalf of the E/U Policy ever participate in any settlement discussions pertaining to the state court action. *Id.* at 40 (Dkt. 79-4 at 487). At the July 24, 2014 settlement conference, however, Brian Robischeau ("Robischeau"), of Liberty Mutual stated coverage in the state court action was available under the OCP Policy for the Niagara Entities, Plaintiff's Exh. W at 41-42 (Dkt. 79-4 at 522-23), and that his assessment was based on property owner liability under N.Y. Labor Law § 241[6].[28] *Id.* at 24-25 (Dkt. 79-4 at 505-06).

On September 22, 2014, Gibson, McAskill, and Crosby was substituted for Fitzgerald as counsel for the Niagara Entities in connection with the state court action. Plaintiff's Exh. Y (Dkt. 79-4 at 532-36).

---

[28] As relevant, N.Y. Labor Law § 241[6] provides,

> All contractors and owners and their agents . . . when constructing or demolishing buildings . . . , shall comply with the following requirements:
>
> *         *         *
>
> 6.      All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. . . .

At a bench trial commencing on October 28, 2014, before Justice Boniello, it was established the accident occurred on property owned by the County, and Lombardo then discontinued the state court action as against NCCC and the Board.  *See* Plaintiffs' Exh. EE at 1232-33 (Dkt. 79-4 at 595-96).  On January 12, 2015, Justice Boniello ruled in Lombardo's favor (State Court Decision"),[29] finding a violation of N.Y. Labor Law § 241[6], and that such violation constituted negligence and proximately caused Lombardo's injuries.  State Court Decision at 2-4.  Finding no comparative fault on Lombardo's part, Justice Boniello awarded Lombardo $ 7.25 million in damages.

Post-trial mediation ensued and on June 3, 2016, the state court action was settled for $ 5.5 million, of which $ 1 million was paid by Farm Family under the Auto Policy, and $ 1 million was paid by Excelsior under the OCP Policy, such that the limits of both the Auto and OCP Policies have been reached, and the County was to pay the remaining $ 3.5 million with $ 2 million to be paid when the settlement paperwork was completed and the remaining $ 1.5 million paid in five yearly installments of $ 300,000 ("the Settlement Agreement").  Lombardo provided two separate releases dated June 6 and 9, 2016, naming the three Niagara Entities, and referencing receipt from Farm Family and Excelsior of partial payment of the amounts due under the Settlement Agreement, with a note obligating payment of the rest by the County.  When payment from the County was not received, Lombardo, through his attorney, obtained from Justice Boniello in New York Supreme Court, Niagara County, on July 11, 2016, a Judgment in the amount of the Settlement Agreement's unpaid portion, plus interest and costs, for a total of $ 4,539,290.65.  The trial court judgment was then vacated by

---

[29] Plaintiff's Exh. FF (Dkt. 79-4 at 598-606).

stipulation on July 15, 2016, and the final stipulation discontinuing the state court action was entered in New York Supreme Court, Niagara County on August 12, 2016.

The Niagara Entities then commenced this action in New York Supreme Court, Niagara County, seeking insurance coverage from Netherlands on the CGL Policy and from Excelsior on the E/U Policy.  Plaintiff has not argued in opposition to granting Defendants summary judgment under the CGL Policy but continues to seek coverage under the E/U Policy.

## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  Any "disputed questions of material fact [however] should be resolved by a jury at trial, not by a court at summary judgment."  *Dufort v. City of New York*, 874 F.3d 338, 349-50 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [when] he is ruling on a motion for summary judgment. . . .") (bracketed material in original)).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).  Furthermore, "[a]lthough

summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony,' district courts should not 'engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.'" *Rivera v. Rochester Genesee Regional Transp. Authority*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005), and *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)).

In the instant case, Defendants argue in support of summary judgment that no insurance coverage for the accident exists under either the CGL or E/U Policy, Defendants' Memorandum at 12-17, and that neither Netherlands nor Excelsior waived application of the relevant insurance exclusions specified in the Disclaimer Letter. *Id.* at 17-25. Plaintiff limits its response in opposition to its request for coverage under the E/U Policy, Plaintiff's Response at 1, and similarly limits its summary judgment motion to seeking recovery under the E/U Policy, Plaintiff's Memorandum at 13, arguing Excelsior waived any coverage defenses based on policy exclusions by failing to issue a timely disclaimer notice, Plaintiff's Response at 2-10; Plaintiff's Memorandum at 13-24, insurance coverage for the accident was available under the E/U Policy, Plaintiff's Memorandum at 24-34, the Owned-Auto Exclusion did not apply to Lombardo's state court action, Plaintiff's Response at 10-14; Excelsior's affirmative defenses should be dismissed for lack of merit, Plaintiff's Memorandum at 34-41, and the County is entitled to recover interest from the date of the settlement. *Id.* at 41. In further support of summary judgment, and in opposition to Plaintiff's motion, Defendant Excelsior argues the E/U Policy provides no coverage for the state court action, Defendants' Response at

19

10-16, Excelsior did not waive application of the Owned-Auto Exclusion, Excelcior's Response at 16-28; Defendants' Reply at 3-8, urges that the E/U Policy's Owned-Auto Exclusion applies, Defendants' Reply at 8-10, an issue of fact exists as to whether the County reasonably settled or failed to mitigate, Defendants' Response at 29-30, Excelsior's affirmative defenses are viable and should not be dismissed, *id.* at 31, any interest should be calculated from the date of payment, *id.* at 31-33, and the County's failure to submit evidence of damages requires denying the County summary judgment. *Id.* at 33.  In further opposition of Defendants' Motion, and in further support of Plaintiff's Motion, Plaintiff insists the County qualifies under the E/U Policy as an additional insured, Plaintiff's Sur-Reply at 1-7, Excelsior waived any coverage defense under the E/U Policy based on the Owned-Auto Exclusion by failing to provide the County with a timely and sufficient written notice disclaiming coverage, Plaintiff's Reply at 2-6, the E/U Policy's Owned-Auto Exclusion did not apply to Lombardo's state court action, *id.* at 6-8, and there is no issue of fact that the settlement was reasonable, *id.* at 8-10.  In further support of summary judgment, Defendants maintain the County could never have had a reasonable expectation of coverage as determined within the four corners of the E/U Policy.  Defendants' Sur-Reply at 1-2.

## 2.    Overview of Relevant Insurance Law

Preliminarily, where, as here, jurisdiction in federal court is based upon diversity, an action to recover under an insurance policy is governed by state law.  *Brocklesby Transport v. Eastern States Escort*, 904 F.2d 131, 132 (2d Cir. 1991) (in a diversity case for coverage under insurance policy, "state law controls the underlying substantive right of an insured to recovery" (citing cases)).  As such, New York law applies here.

20

"Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." *Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.*, 774 N.E.2d 687, 690 (N.Y. 2002). Accordingly, the burden lies with the County to establish a covered accident or occurrence, while the burden is on Defendants to establish coverage for such accident or occurrence is excluded under the relevant insurance policies. *Id.*

"New York courts interpret insurance policies according to principles of contract law, giving policy language its 'plain and ordinary meaning' and construing ambiguities in favor of the insured." *Philadelphia Indemnity Insurance Co. v. Central Terminal Restoration Corp.*, 722 Fed.Appx. 79, 83 (2d Cir. Feb. 21, 2018) (quoting *Selective Ins. Co. of America v. County of Rensselaer*, 47 N.E.3d 458, 462 (N.Y. 2016)). As such, "'[i]n determining a dispute over insurance coverage, we first look to the language of the policy.'" *Selective Ins. Co.*, 47 N.E.3d at 462 (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002)). "'[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (quoting *Greenfield v. Philles Records*, 780 N.E.2d 166, 170-71 (N.Y. 2002)). As such, "if a contract 'on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.'" *Id.* (quoting *Greenfield*, 780 N.E.2d at 171). "Although provisions of an insurance policy drafted by the insurer are generally construed against the insurer if ambiguous, a policy provision mandated by statute must be interpreted in a neutral manner consistent with the intent of the

legislative and administrative sources of the legislation." *Matter of State Farm Mutual Auto Ins. Co. v. Fitzgerald*, 38 N.E.3d 325, 328 (N.Y. 2015) (citations omitted). Insurance policies further "must be 'construe[d] . . . in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.'" *Selective Ins. Co.*, 47 N.E.3d at 461 (quoting *Consolidated Edison*, 774 N.E.2d at 693).

At issue in the instant case is whether insurance coverage is available under the commercial general liability policy issued by Netherlands (the CGL Policy), and under the excess/umbrella policy issued by Excelsior (the E/U Policy). Primary insurance policies like the Netherland's CGL Policy provide the first layer of insurance coverage, attaching immediately upon the occurrence of a liability or loss as defined in the policy. *Ali v. Fed. Ins. Co.*,719 F.3d 83, 90 (2d Cir. 2013). In contrast, insurance coverage under an excess policy like Excelsior's E/U Policy is triggered only after the liability limits of the underlying primary insurance policy have been exhausted. *Id.* at 91. The "very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is activated." *Id.* *See also Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 77 (2d Ci. 1993) ("The word 'primary' is used . . . in the field of excess insurance to distinguish coverage which attaches immediately upon the happening of an occurrence, from excess coverage, which attaches only after a predetermined amount of 'primary' coverage has been exhausted.").

With regard to claims for coverage pertaining to death or bodily injury arising out of a motor vehicle accident or any other accident within New York, an insurer is required

under N.Y. Insurance Law § 3420(d) ("§ 3420(d)"), to provide timely notice, in writing, of a denial of coverage to the insured, the injured person, and any other claimant. *Worcester Ins. Co. v. Bettenhauser*, 734 N.E.2d 745, 747 (N.Y. 2000).  Nevertheless, because a failure to disclaim coverage cannot operate to create coverage that otherwise did not exist, *id.* there is no obligation to disclaim coverage that does not exist.  *Id.*

**3.    Coverage**

Plaintiff seeks coverage under Netherlands' CGL Policy and Excelsior's E/U Policy.  Although Plaintiff moves for summary judgment only with regard to the request for coverage under the E/U Policy, the court does not limit its consideration to only that issue, but addresses the availability of coverage under the CGL Policy in the interest of completeness.

**A.    CGL Policy**

As set forth above, Facts, *supra*, at 6-7, the CGL Policy names TGR as the insured and the County as an additional insured, was in effect when the accident occurred, and is comprised of two parts including the Commercial GL Part and the Commercial Auto Part.

**1.    Commercial GL Part**

As relevant here, the Commercial GL Part specifies Netherlands

will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

CGL Policy § 1.a (Dkt. 79-4 at 259).

Accordingly, absent any provision excluding coverage, Netherlands is obligated to pay as damages those sums to which TGR becomes legally obligated to pay because of any of Lombardo's bodily injuries to which the Commercial GL Part applies, and Defendants do not argue otherwise.

Nevertheless, excluded from insurance coverage under the CGL Policy's Commercial GL Part's Aircraft, Auto, Or Watercraft Exclusion ("AAW Exclusion"), is

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which causes the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

CGL Policy Coverage Exclusions, § I.2.g, AAW Exclusion (Dkt. 79-4 at 262).

As relevant to the AAW Exclusion,

> "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment."

CGL Policy – Definitions § V.2 (Dkt. 79-4 at 270).

Accordingly, because the accident occurred when Lombardo was riding in the bed of the TGR's stake truck while transporting windows at the worksite, the accident arose out of the use of an auto "designed for travel on public roads" for which coverage is excluded under the Commercial GL Part of the CGL Policy.

### 2.    Commercial Auto Part

The CGL Policy's Commercial Auto Part provides Netherlands

> will pay all sums an "Insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

CGL Policy, Business Auto Coverage Form, Liability Coverage § 2.A (Dkt. 79-4 at 205).

As relevant to the Commercial Auto Part, there are two categories of "covered 'autos'" including "hired 'autos' only" and "non-owned 'autos' only". "Hired" autos are

> Only those "autos you lease, hire, rent or borrow. This does not include any "auto" you lease, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

*Id.*, Description of Covered Auto Designation Symbols, Symbol 8 (Dkt, 79-4 at 204).

"Non-owned" autos are

> Only those "autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

*Id.*, Symbol 9 (Dkt. 79-4 at 204).

The Commercial Auto Part further provides

> Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

CGL Policy, Business Auto Coverage Form (Dkt. 79-4 at 204).

In the instant case, it is undisputed that the stake truck in which Lombardo was riding when the accident occurred was owned by TGR. *See* Defendants' Statement of Facts ¶ 9; Plaintiff's Statement of Facts ¶¶ 22, 36, 42, 65. As such, because the CGL Policy specifically provides the Commercial Auto Part insures accidents attributed only to hired autos or to non-owned autos, the CGL Policy does not apply to the accident

attributed to operation of TGR's stake truck.  Thus, no insurance coverage for the accident is available under the CGL Policy's Commercial Auto Part, and Plaintiff does not argue otherwise.

Accordingly, no coverage for the accident is available for Plaintiff under either the Commercial GL or the Commercial Auto Part of the CGL Policy.

### B.    E/U Policy

The E/U Policy issued by Excelsior, for the period October 24, 2007 to October 24, 2008, names TGR as the insured with the County an additional insured, and limits coverage to $ 5 million for each occurrence, and $ 5 million in the aggregate.  The E/U Policy provides for excess insurance coverage for claims for which coverage is provided pursuant to the CGL Policy.  E/U Policy, Schedule of Underlying Insurance[30] (Dkt. 79-4 at 303).  As discussed, Discussion, *supra*, at 22, generally, coverage under an excess or umbrella insurance policy is available only when the coverage liability limits on any relevant underlying or primary insurance policies have been met.

Significantly, the E/U Policy identifies TGR as the Named Insured, and names no other entity, including the County, as an additional insured.  E/U Policy at Bates Peerless 654 and 658 (Dkt. 79-4 at 299, 303).  Only the Netherlands CGL Policy is listed on the Schedule of Underlying Insurance.[31]  *Id.* at Bates Peerless 658 (Dkt. 79-4 at 303).  The E/U Policy's Loss Payable provision states

We [Excelsior] shall be liable for payment under this Coverage Part only after the insured or "underlying insurer" has become obligated to pay the "retained limit".

*Id.* at Bates Peerless 669 (Dkt. 79-4 at 314).

---

[30] Neither the Farm Family Policy nor the OCP Policy is listed on the Schedule of Underlying Insurance.
[31] Although also issued by Excelsior, Defendants maintain, Defendants' Response at 11 n. 4, and Plaintiff does not dispute, that the E/U Policy is distinct from the OCP Policy.

Accordingly, because the County is not named as an insured, and the only "underlying insurer" is Netherlands based on its issuance of the CGL Policy listed on the Schedule of Underlying Insurance, and on which Netherlands is not obligated to pay for the reasons discussed, Discussion, *supra*, at 23-25, it initially appears the County is not entitled to coverage for the accident under the E/U Policy.

Nevertheless, as Plaintiff argues, Plaintiff's Memorandum at 25; Plaintiff's Sur-Reply at 4-5, the E/U Policy defines "insured" to include "any person or organization legally responsible for the actions of an insured. . . ."  *See Erie Ins. Exchange v. J.M. Pereira & Sons, Inc.*, 57 N.Y.S.3d 823, 828 (4th Dept. 2017) (holding an excess insurance provision pursuant to which the insurer's obligation to pay was triggered when coverage under another policy, although not an insurance policy underlying the excess insurance policy, was triggered established exhaustion of the underlying policy coverage was not required), *aff'd*, 96 N.E.3d 205 (N.Y. 2018).  Although not specifically referenced by Plaintiff, under Section II of the E/U Policy, sub-titled "Who is an Insured?" defines an insured under the E/U Policy to include,

> Only with respect to the "auto hazard";

*    *    *

> c.    Any person or organization legally responsible for the actions of an insured but only to the extent of that responsibility. . . .

E/U Policy at Bates Peerless 687-88, Section II – Who is an Insured?, § 11.3 (Dkt. 79-4 at 332-33).

"Auto hazard" is defined as "liability arising out of the ownership, maintenance, use or 'loading or unloading' of any 'auto.'"  *Id.* at Bates Peerless 693 (Dkt. 79-4 at 338).

In the state court action, the County was found liable under N.Y. Labor Law §

241[6] ("§ 241[6]"), *i.e.*, for violating a "nondelegable duty of landowners and contractors

to provide reasonable and adequate protection and safety to workers and comply with

the safety rules and regulations promulgated by the Commissioner of the Department of

Labor. . . . "  State Court Decision at 2 (Dkt. 79-4 at 601).  Justice Boniello found N.Y.

Labor Law § 241[6] is intended to protect laborers against not only unsafe equipment,

but unsafe procedures used during construction, and that such protections are not

limited to the actual construction site.  *Id.* at 3 (Dkt. 79-4 at 602).  That the windows

were not secured in the bed of the stake truck established a violation of New York

Industrial Code § 23-9.7[c], providing that "[l]oads that are apt to become dislodged in

transit shall be securely lashed in place," 12 N.Y.C.R.R. § 23-9.7[c], thus meeting the

criteria for liability under § 241[6].  *Id.* at 3-4 (Dkt. 79-4 at 602-03.  *Erie Ins. Exchange*,

57 N.Y.S.3d at 828.  Accordingly, the County meets the criteria under the E/U Policy as

an insured with regard to an auto hazard.[32]

Defendants maintain that even if the County is an insured under the E/U Policy,

the accident for which the County seeks coverage is excluded by virtue of the E/U

Policy's Owned-Auto exclusion ("Owned-Auto Exclusion"),[33] which excludes from

coverage any injury or damage arising out of

> those "autos" you own and any trailer you do not own while attached to power
> units you own.  This includes those "autos" you acquire ownership of after the
> policy begins.
>
> This insurance does not apply to "bodily injury", "property damage" or "personal
> and advertising injury" arising out of "autos" designated in the Schedule.  This
> exclusion applies even if the claims against any insured allege negligence or

---

[32] The finding that the County is an Insured is not to be construed as indicating the County is a Named
Insured, as that term is specifically defined in a manner not met by the County.
[33] E/U Policy New York Changes Endorsement (Dkt. 79-4 at 305).

other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the "offense" which caused the "personal and advertising injury", involved the ownership, maintenance, use or entrustment of others of any "auto" that is designated in the Schedule.

E/U Policy, Owned-Auto Exclusion, Bates Peerless 660 (Dkt. 79-4 at 305).

Because the "auto-hazard" at issue in the instant action, *i.e.*, the accident, arose from use of an auto, *i.e.*, the stake truck, that was owned by TGR, the Owned-Auto Exclusion excludes insurance coverage for the accident regardless of whether Plaintiff is considered an additional insured under the E/U Policy.

In opposition, Plaintiff argues that the Owned-Auto Exclusion does not apply because the term "'you' and 'yours'" is ambiguous such that is must be construed against the insurer to refer to additional insureds, Plaintiff's Memorandum at 26-34, and also maintains the E/U Policy's "Separation of Insureds" provision requires the County, as an additional insured, be treated as a named insured. *Id.* (citing E/U Policy at Bates Peerless 691 (Dkt. 79-4 at 336)). There is, however, no merit to either of these arguments.

In support of its ambiguity argument, Plaintiff maintains that because an insurer's burden in negating coverage based on an exclusion is "heavy," requiring an exclusion be stated in clear and unmistakable language, Excelsior could have drafted the Owned-Auto Exclusion "to apply to autos owned 'by the named insured' or autos owned 'by any insured'," Plaintiff's Memorandum at 26, and Excelsior's failure to do so creates an ambiguity establishing coverage to the County because the term "'you' and 'yours'" could apply either to a named insured or to an additional insured like the County. *Id.* at 26-27. Plaintiff further maintains that the multiple meanings given in the E/U Policy to

the word "you," when considered together with the Separation of Insureds provision,

creates an ambiguity compelling a finding in the County's favor on the coverage issue.

*Id.* at 27-30.  In short, Plaintiff's argument is that while the term "named insured" is

susceptible to only one meaning and, thus, is unambiguous, the term "you" may be

interpreted several ways, including as referring to an additional insured, rending it

ambiguous and compelling insurance coverage for the Lombardo award.  *Id.* at 30-34.

> As relevant, the E/U Policy provides that

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

E/U Policy - Commercial Umbrella Liability Coverage Form, Bates Peerless 675 (Dkt. 79-4 at 320).

Significantly, as Plaintiff concedes, Plaintiff's Memorandum at 26, the E/U Policy's

Declarations specifies only TGR as the Named Insured, E/U Policy - Common Policy

Declarations, Bates Peerless 654 (Dkt. 79-4 at 299), and the only other provision in the

E/U Policy designating any other entity as a Named Insured specifies in pertinent part,

> b.    Each of the following is also an insured:
> (1)    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no similar insurance available to that Organization. . . .

E/U Policy Section II – Who Is An Insured? ¶ 1.b(1) at Bates Peerless 686 (Dkt. 79-4 at 331).[34]

Because the County is not an organization newly acquired or formed by TGR, the

County by definition is not a Named Insured under the E/U Policy.  *See Endurance*

*American Specialty Ins. Co. v. Century Sur. Co.*, 630 Fed.Appx. 6, 8 (2d Cir. Nov. 4,

---

[34] Elsewhere within this section, the term "insured" as opposed to "Named Insured" is used.

2015) (holding that because the term "you" referred only "to the Named Insured shown in the Declarations," the only Named Insured to whom the subject insurance policy applied was the entity named in the policy's Declarations, such that the insurance policy did not provide coverage to an additional insured who did not meet the policy's definition of "you").  Plaintiff urges that because the term "you" is not enclosed in quotation marks as it appears in the Owned-Auto Exclusion, the term "you" is not restricted to the Named Insured as specifically defined in the E/U Policy, *i.e.*, as provided at E/U Policy - Commercial Umbrella Liability Coverage Form, Bates Peerless 675 (Dkt. 79-4 at 320), but instead is ambiguous and could refer to an additional insured.  Plaintiff's Memorandum at 29-32.  Plaintiff, however, references no case law supporting this unique argument whereby terms are accorded a specific definition as stated in an insurance policy only when placed in quotation marks, and the court's research reveals none.  Accordingly, there is no merit to Plaintiff's argument that the term "you" as used in the Owned-Auto Exception is ambiguous, and only TGR qualifies under the E/U Policy as a Named Insured, not Plaintiff.

Nor is excess insurance coverage available to Plaintiff insofar as Plaintiff asserts the E/U Policy's Separation of Insureds provision requires the County be considered a Named Insured.  Pursuant to the so-called "separation of insureds" doctrine, "'each individual additional insured, although not named as an insured in the policy must be treated as if separately covered by the policy'," *Citizens Ins. Co. of America v. Illinois Union Ins. Co.*, 964 N.Y.S.2d 131, 132 (1st Dept. 2013) (quoting *Greaves v. Public Serv. Mut. Ins. Co.*, 155 N.E.2d 390, 391 (N.Y. 1959)), "and indeed as if he (additional insured) had a separate policy of his own."  *Greaves*, 155 N.E.2d at 391-92.  As such,

an insurer's disclaimer of insurance coverage to one insured based on a defense to

coverage does not preclude coverage to a separate additional insured absent a

separate defense.  *See 233 East 17th Street, LLC v. L.G.B. Development, Inc.*, 913

N.Y.SD.2d 110, (2d Dep't 2010) ("that the primary insured had breached a condition

precedent under the policy which voided coverage, was not sufficient for disclaiming

coverage as to the [additional insured because e]ach individual insured must be treated

as if it had a separate policy of its own with the insurer." (citing *Greaves*, 155 N.E. 2d at

392; and *BMW Fin. Servs. v. Hassan*, 710 N.Y.S.2d 607, 608 (2d Dep't 2000), *lv. to

appeal den.*, 740 N.E.2d 653 (N.Y. 2000)).

> Here, the E/U Policy's Separation of Insureds provision states that
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
> a.      As if each Named Insured were the only Named Insured; and
> b.      Separately to each insured against whom claim is made or "suit" is brought.

E/U Policy, Section IV – Conditions, ¶ 8, Bates Peerless 691 (Dkt. 79-4 at 336).

Plaintiff urges that the Separation of Insureds provision's reference to the Named

Insured, in combination with the term "you" as found in the Owned-Auto Exclusion, is

ambiguous. Plaintiff's Memorandum at 29-32.  Simply put, interpreting "you" as found in

the Owned-Auto Exclusion as ambiguous, in combination with the Separation of

Insureds provision, would permit the County, which otherwise is only an additional

insured, to be considered a Named Insured and, because the stake truck in which

Lombardo was riding when the accident in which he was injured occurred was not

owned by the County, the Owned-Auto Exclusion, otherwise applicable to TGR, would

not preclude coverage for the accident to the County.

Because, as discussed, Discussion, *supra*, at 29-31, there is no merit to Plaintiff's argument that as used in the Owned-Auto Exclusion, "you" is an ambiguous term, the court does not further consider this part of the argument in construing the Separation of Insureds clause.  Moreover, the Second Circuit Court of Appeals recently construed an identical Separation of Insureds clause as pertaining only to the Named Insured, rejecting the argument, similar to Plaintiff's in this case, that the Separation of Insureds provision required construing an insurance exclusion from the perspective of the particular additional insured seeking coverage.  *Endurance American Specialty Ins. Co.*, 630 Fed.Appx. at 7-8.  The delineation in the Separation of Insureds clause between "Named Insured", Separation of Insureds Provision ¶ a, and "each insured", *id.* ¶ b, establishes it was intended that the Owned-Auto Exclusion, for which the term "you" refers only to a Named Insured, applies only to a Named Insured, here, TGR.  *Id.* at 8. Moreover, failing to construe the Separation of Insureds provision as distinguishing between a "Named Insured" and "each insured" would in effect fail to give meaning to a portion of the provision in violation of rules of contract construction.  *See* Discussion, *supra*, at 22 (citing *Fitzgerald*, 38 N.E.3d at 328).

Plaintiff does not dispute that TGR's stake truck is an auto for purposes of the Owned-Auto Exclusion.  As such, because the auto involved in the accident was owned by TGR, the only Named Insured, and the E/U Policy's Owned-Auto Exclusion specifically excludes insurance coverage for any bodily injury resulting from the use of an automobile owned by TGR, no coverage is available under the E/U Policy.

4.    **Disclaimer**

Having found coverage for the accident was subject to the CGL Policy's AAW

Exclusion, as well as the E/U Policy's Owned-Auto Exclusion, the court considers

whether the Disclaimer Letter timely and sufficiently disclaimed coverage for the

accident.  Plaintiff maintains the Disclaimer Letter was not a valid disclaimer of

coverage as to the County because the Disclaimer Letter (1) was not addressed to the

County or to the County's representative, but only to TGR's representative; (2)

referenced neither the notice given by the County nor the County's claim for coverage;

(3) failed to reference the County's status as an additional insured; and (4) did not

clearly inform any party of the grounds for disclaimer on which Excelsior now relies.

Plaintiff's Memorandum at 14-15.  Plaintiff explains that although TGR was provided

with a copy of the E/U Policy's Owned-Auto Exclusion, Crosby, the County's attorney at

that time was not, and Anderson's statements to Crosby in the August 22, 2008 Letter,

advising that Anderson was responding to Crosby's August 7, 2008 Letter to Amo, that

a claim had been set up under the OCP Policy to address the Notice of Claim filed on

Lombardo's behalf, and that Peerless would defendand indemnify the Niagara Entities

for the loss through the OCP Policy, but which failed to disclaim coverage under any

policy, reinforced Plaintiff's belief that the Disclaimer Letter was not directed to the

County's claim for coverage.  Plaintiff's Memorandum at 15-24; Plaintiff's Response at

2-10; Plaintiff's Reply at 2-6.  Accordingly, Plaintiff maintains that because of these

deficiencies, the County never received a proper disclaimer of coverage until Peiper's

June 18, 2014 Letter advising Fitzgerald and Berger that Peiper was clarifying Liberty

Mutual's coverage position as to the CGL and E/U Policies, quoting both the CGL

Policy's AAW Exclusion and the E/U Policy's Owned-Auto Exclusion, stating the
Disclaimer Letter "clearly advised" both TGR and the Niagara Entities no coverage was
available under the E/U Policy for injuries Lombardo sustained in the accident because
it was undisputed the accident arose out of the use of a vehicle owned by TGR and,
thus, was excluded from coverage by the Owned-Auto Exclusion. *Id.* (citing June 18,
2014 Letter at 11 (Dkt. 79-4 at 743)). Plaintiff thus challenges both the timeliness and
sufficiency of the coverage disclaimer. In opposition, Defendants maintain a plain
reading of the Disclaimer Letter establishes it sufficiently advises each recipient,
including the County given that a copy of the Disclaimer Letter was sent to Crosby, that
no coverage for Lombardo's accident was available under the CGL Policy or the E/U
Policy, with both the CGL Policy's AAW Exclusion and the E/U Policy's Owned-Auto
Exclusion quoted in the Disclaimer Letter. Defendants' Memorandum at 9-11, 19-25;
Defendants' Response at 16-28; Defendants' Reply at 3-8.

Where coverage exists under a particular policy, and the carrier unreasonably
delays in denying coverage or disclaiming liability based upon a policy exclusion or
defense, estoppel may apply to prevent the carrier from doing so – provided the insured
can demonstrate that he relied upon the carrier's actions to his detriment and was
prejudiced by the carrier's delay in denying or disclaiming coverage. *In re U.S.
Specialty Ins. Co. (Denardo)*, 57 N.Y.S.3d 743, 747 (3d Dep't 2017). Nevertheless,
where "the denial of that claim is based upon lack of coverage, estoppel may not be
used to create coverage regardless of whether or not the insurance company was
timely in issuing its disclaimer." *Id.* (citing cases). "The purposed of the statute [§
3420(d)] was to protect the insured, the injured person, and any other interested party

who has a real stake in the outcome, from being prejudiced by a belated denial of coverage." *Excelsior Ins. Co. v. Antretter Contracting Corp.*, 693 N.Y.S.2d 100, 104 (1st Dep't 1999). Simply stated, under New York Law, "the failure to disclaim coverage does not create coverage which the policy was not written to provide." *Zappone v. Home Ins. Co.*, 432 N.E.2d 783, 785 (1982), and "[a] disclaimer is unnecessary when a claim does not fall within the coverage terms of [the] insurance policy." *Markevics v. Liberty Mutual Ins. Co.*, 761 N.E.2d 557, 559 (N.Y. 2001) (citing *Worcester Inc. Co. v. Bettenhauser*, 734 N.E. 2d 745, 747 (N.Y. 2000)). "Conversely, a timely disclaimer pursuant to [N.Y.] Insurance Law § 3420(d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion." *Id.* at 560. Nevertheless, strict compliance with § 3420(d) is not "intended to be a technical trap that would allow interested parties to obtain more than the coverage contracted for under the policy." *Excelsior Ins. Co.*, 693 N.Y.S.2d at 104 (citing cases).

Preliminarily, the court observes that insofar as Plaintiff asserts Defendants' disclaimer of coverage was untimely, such argument is inextricably bound up with Plaintiff's assertion that the Disclaimer Letter, which undeniably was timely, failed to sufficiently advise Plaintiff that no coverage would be provided under the CGL or E/U Policies, such that it was not until Fitzgerald and Berger received the June 18, 2014 Letter, that Plaintiff became aware coverage was being disclaimed, and such notice was untimely, a point Defendants do not dispute. Accordingly, the court does not separately address the timeliness of the Disclaimer Letter, but only whether the Disclaimer Letter sufficiently advised Plaintiff that coverage was disclaimed.

With regard to Plaintiff's argument that the Disclaimer Letter failed to sufficiently advise insurance coverage was being disclaimed to the County under the CGL and E/U Policies because it was not addressed to the County or to the County's representative, but only to TGR's representative, advising it was in response to TGR's request for coverage made in a telephone call between Mr. Anderson and the TGR representative, Plaintiff's Memorandum at 18, under relevant New York case law, a disclaimer letter is effective as against an additional insured so long as the additional insured received a copy of it.  *See Mount Vernon Fire Ins. Co. v. Harris*, 193 F.Supp.2d 674 (E.D.N.Y. 2002) (upholding sufficiency of insurance disclaimer addressed to the insured with copy sent to the claimant); *Centereach Realty, LLC v. Essex Insurance Co.*, 759 N.Y.S.2d 664, 664 (1st Dep't 2003) (receipt of copy of disclaimer letter containing language specifically indicated insurance coverage would not be provided was in compliance with § 3420(d) notice requirements); *Miranda v. Aetna Cas. & Sur. Co.*, 381 N.Y.S.2d 320, 320 (2d Dep't 1976) ("the service of a carbon copy of the letter of disclaimer on the injured plaintiff's attorney satisfied the statutory requirement" under New York Ins. Law § 3420(d) regarding disclaimer notice) (citing cases); *Campbell v. Travelers Ins. Co.*, 317 N.Y.S.2d 444, 448 (3rd Dep't 1970) (service of liability insurer's disclaimer by forwarding notice of disclaimer to insured and sending copy to injured plaintiff's attorney was sufficient), *aff'd*, 303 N.E.2d 707 (N.Y. 1973).  Significantly, the cases on which Plaintiff relies in support of the argument that the County did not receive timely and sufficient notice of the disclaimer because the Disclaimer Letter was not specifically addressed to the County, and the County was provided with only a carbon copy of the Disclaimer Letter, are inapposite as in each such case, the insured who was denied

37

coverage did not receive any timely notice of disclaimer.  *See, e.g., Progressive Northern Ins. Co. v. Beltempo*, 2009 WL 1357947, at * 4 (S.D.N.Y. May 14, 2009) ("*Beltempo*") (holding insurer's failure to notify named insured's co-defendant, who sought contribution and indemnification from named insured, of disclaimer based on late notice precluded insurer from later asserting any coverage defense against the co-defendant); *Sierra v. 4401 Sunset Park, LLC*, 25 N.E.3d 8, 9-10 (N.Y. 2014) (holding insurer, by failing to send disclaimer notice to additional insureds or their attorney, did not comply with § 3420(d)'s notice requirement).  There is, thus, no merit to Plaintiff's argument that the receipt by Crosby of only a carbon copy of the Disclaimer Letter was insufficient to notify Plaintiff of the disclaimer.

Insofar as Plaintiff argues the Disclaimer Letter was insufficient because it referenced neither the notice given by the County nor the County's claim for coverage, Plaintiff's Memorandum at 18-24, Plaintiff's Response at 4-10; Plaintiff's Reply at 3-4, Defendant counters that the Disclaimer Letter's subject line, *i.e.*, "Re:  Notice of Claim – Michael Lombardo v. County of Niagara, et. al." Disclaimer Letter at 1 (Dkt. 79-4 at 428), sufficiently references the County's claim for coverage.  Defendants' Response at 24-25; Defendants' Reply at 3-4.  In support of their respective arguments, both Plaintiff and Defendants rely on *Centereach Realty, LLC v. Essex Insurance Co.*, 2002 WL 34358163 (Sup. Ct. N.Y. Cty. Aug. 21, 2002) (hereinafter "*Centereach*"), *aff'd*, 759 N.Y.S.2d 664 (1st Dep't 2003).

In *Centereach*, a construction worker who was injured while working on Centereach's property commenced an action for negligence and violations of New York Labor Law, similar to Lombardo's claims against the County in the instant action.

Centereach tendered a claim for coverage to the defendant insurer who had issued a liability policy to the construction company that employed the injured construction worker and on which Centereach was an additional insured. *Id.* The insurer, Essex Insurance, disclaimed coverage to the named insured construction company, as well as to Centereach, based on the policy's employee exclusion, stating in its disclaimer letter, "Thus, no coverage exists for the claim brought by [the injured construction worker] or Centereach. We must decline Centereach's claim for this matter for the reasons discussed above." *Id.* In holding this language sufficiently disclaimed coverage both to the construction company as well as to Centereach, the court reasoned the disclaimer letter's foregoing language "did not address [the construction company] alone. It addressed the suit brought against Centereach by [the injured construction worker] and stated that no coverage existed for Centereach's demand for defense and indemnification." *Id.* In affirming the Supreme Court's decision that this language was sufficient to disclaim coverage as to both the construction company and Centereach, the Appellate Division, First Department stated, "Centereach received a copy of the disclaimer letter, which contained language specifically indicating that it would not be provided coverage." *Centereach*, 759 N.Y.S.2d at 664.

In the instant case, Plaintiff argues the Disclaimer Letter's subject line should not be construed as referencing only the County's claim for coverage because it is possible that other claims related to the accident existed when the Disclaimer Letter was issued, especially given the Contract required TGR to indemnify and hold the County harmless from any claims arising from the Project, such that Lombardo's claim against the County triggered TGR's indemnification obligation. Plaintiff's Reply at 3. This argument,

however, overlooks that the Disclaimer Letter's subject line does not simply reference a generic "claim" but, rather, specifically references "<u>Notice</u> <u>of</u> <u>Claim</u> – Michael Lombardo v. County of Niagara, et. al." Disclaimer Letter at 1 (Dkt. 79-4 at 428) (underlining added).   As such, the Disclaimer Letter's subject line logically and reasonably can only be interpreted as referring to the Notice of Claim the County tendered on August 7, 2008 to Reller Risk, a determination that is further supported by the fact that copies of the Disclaimer Letter were mailed to Amo at Reller Risk, as well as to the County's attorney, Crosby.  Disclaimer Letter at 7 (Dkt. 79-4 at 434).  Significantly, the Disclaimer Letter consistently and repeatedly states coverage is being denied for the "above captioned matter" and the "incident," but never to a "claim," generic or otherwise. Moreover, the Notice of Claim's specification that Lombardo asserts claims against the Niagara Entities for injuries, medical expenses, and lost wages sustained by reason of an injury that occurred on May 27, 2008 at the NCCC campus while Lombardo was working in the employ of TGR, Notice of Claim at 1-2 (Dkt. 79-4 at 401-02), establishes the claims to which the Disclaimer Letter applies.  Accordingly, there is no merit to Plaintiff's argument that the Disclaimer Letter fails to identify it is in response to Lombardo's claims against the County.

Plaintiff next argues that the Disclaimer Letter was required to refer to the insurer's position with regard to coverage for the County as an additional insured. Plaintiff's Memorandum at 21.  In opposition, Defendants maintain no law required the Disclaimer Letter reference Plaintiff's status as an additional insured, and characterizes this argument as a "red-herring."  Defendants' Response at 25-26.

In support of this argument, Plaintiff relies on *Beltempo*, where the Disclaimer Letter neither referenced a notice of claim by the additional insured, nor mentioned the insurer's position regarding coverage with respect to the additional insured. *Beltempo*, however, is factually distinguishable from the instant case.  In particular, in *Beltempo*, the insurer's disclaimer was held insufficient as to an additional insured not because the disclaimer failed to reference the additional insured's status as such but, rather, because the disclaimer was devoid of *any* reference to the additional insured or to the timeliness of the additional insured's notice provided to the insurer.  *Beltempo*, 2009 WL 1357947, at * 6.  Accordingly, the court's determination in *Beltempo* that the insurer's disclaimer letter to the additional insured was ineffective as a matter of law was not based on the failure to refer to the additional insured's status.  Significantly, Plaintiff references no other case law in support of this novel concept, and the court's research reveals none.  Accordingly, this argument is without merit.

Finally, Plaintiff's argument that the Disclaimer Letter did not clearly inform any party of the grounds for disclaimer on which Excelsior now relies because although the Disclaimer Letter to TGR, to whom the Disclaimer Letter was addressed, included a copy of the E/U Policy's Owned-Auto Exclusion, no copy of the Owned-Auto Exclusion was included with the copy of the Disclaimer Letter sent to Crosby, the County's attorney, and Anderson's statements to Crosby in the August 22, 2008 Letter, advising that a claim had been set up under the OCP Policy to address the Notice of Claim filed on Lombardo's behalf, for which Peerless would defend and indemnify the Niagara Entities for the loss through the OCP Policy, but which failed to disclaim coverage under any policy, establishes the Disclaimer Letter did not sufficiently disclaim coverage to the

County under the E/U Policy.  Plaintiff's Memorandum at 15-24.  Although a copy of the Owned-Auto Exclusion was enclosed with the Disclaimer Letter sent to TGR, but was not similarly enclosed with the copy of the Disclaimer Letter sent to Amo, Crosby and Capizzi, a plain reading of the Disclaimer Letter establishes the full text of the Owned-Auto Exclusion is printed therein.  Disclaimer Letter at 6 (Dkt. 79-4 at 433).  Quoting the text of the exclusion on which a disclaimer of coverage is based has been held sufficient to specify notice of denial of coverage.  *See New York Mut. Underwriters v. O'Connor*, 482 N.Y.S.2d 144, 145 (3d Dep't 1984) (insurer's letter quoting "the full text of the exclusion in the policy it was relying on" in disclaiming coverage "unambiguously and effectively gave notice" that the insurance policy provided no coverage for the claim).  This argument thus also fails.

On this record, Defendants sufficiently and timely disclaimed coverage to Plaintiff under the CGL and E/U Policies.  Accordingly, summary judgment should be GRANTED in favor of Defendants and DENIED as to Plaintiff.

**5.    Affirmative Defenses**

Although the granting of summary judgment in favor of Defendants would moot Plaintiff's Motion insofar as Plaintiff seeks to strike the Affirmative Defenses asserted by Defendants, because the matter is before the undersigned for a report and recommendation, the argument is addressed in the interest of completeness should the District Judge disagree that Defendants are entitled to summary judgment.

Plaintiff seeks summary judgment as to twelve of the fifteen affirmative defenses asserted by Defendants,[35] including (1) failure to state a claim for relief, Defendant

---

[35] Plaintiff does not seek summary judgment as to the three affirmative defenses pertaining only to the CGL Policy issued by Netherlands.

Insurers' Answer (Dkt. 24) ("Answer") ¶ 53; (2) waiver or estoppel, *id.* ¶ 54; (3) statute of frauds and parole evidence rule, *id.* ¶ 55; (4) failure to mitigate damages, *id.* ¶ 56; (5) unreasonable attorneys' fees, *id.* ¶ 57; (6) policy exclusions and liability limits bar coverage, *id.* ¶ 58; (7) the County does not qualify as an additional insured, *id.* ¶ 59; (8) the E/U Policy's Owned-Auto Exclusion bars coverage, *id.* ¶ 61; (10) Plaintiff is not the real party in interest, *id.* ¶ 64; (11) the County has not suffered any damages in the underlying state court action, *id.* ¶ 65; and (12) failure to join necessary and indispensable parties. *Id.* ¶ 66. Plaintiff's Memorandum at 34-39. In opposition, Defendants argue that some of the affirmative defenses asserted with regard to Excelsior have merit and, thus, should not be dismissed, including (1) failure to state a claim for relief, (2) the statute of frauds and parole evidence rule; (3) failure to mitigate damages; (4) policy exclusions and liability limits bar coverage; and (5) the E/U Policy's Owned-Auto Exclusion bars coverage. Defendants' Response at 31. Plaintiff does not argue in further support of summary judgment on this point.

As stated, the court reaches this argument only in the alternative, *i.e.*, in the event the District Judge disagrees that summary judgment should be granted in favor of Defendants either because the E/U Policy's Owned-Auto Exclusion excludes any coverage to the County for the accident or because the Disclaimer Letter was insufficient and untimely. Accordingly, a contrary determination by the District Judge on the E/U Policy's applicability necessarily requires finding as without any merit the affirmative defenses of failure to state a claim for relief, policy exclusions and liability limits bar coverage, and the E/P Policy's Owned-Auto Exclusion bars coverage. The court thus considers only whether the affirmative defenses that coverage is barred

under the statute of frauds and parole evidence rule, as well as failure to mitigate damages.

Defendants maintain the statute of frauds and parole evidence rule apply insofar as the County "seeks coverage in derogation of the explicit written terms of the [E/U] Policy." Defendants' Response at 31. As with the three affirmative defenses just discussed, a determination by the District Judge that coverage to the County is available under the E/U Policy would render this affirmative defense without any merit and, thus, subject to dismissal.

In support of its affirmative defense of failure to mitigate damages, Defendants rely on the same arguments previously asserted in challenging the reasonableness of the Settlement Agreement, Defendants' Response at 31, which, as discussed below, Discussion, *infra*, at 44-46, is without merit. Accordingly, the affirmative defense that the County failed to mitigate damages should be DISMISSED.

**6.    Reasonableness of the Settlement**

Plaintiff contends that insofar as Excelsior previously claimed it was not liable for the amounts paid by the County in settlement of the underlying state action because the settlement unreasonably places all liability on the County, and none on NCCC or the Board, Excelsior, by failing to directly participate in the settlement negotiations in the underlying state court action, despite being offered the opportunity to do so, has waived its right to challenge the amount of the settlement. *Id*. at 39-41. In opposition, Defendants maintain issues of fact exist regarding whether the settlement amount to which the County agreed was reasonable, given that when the settlement agreement was reached, Lombardo had yet to discontinue the claims against NCCC and the

Board, neither of whom could ever qualify under the E/U Policy as insureds. Defendants' Response at 29.  According to Defendants, because Lombardo sought entry of a judgment in the trial court jointly and severally against all three Niagara Entities, NCCC and the Board were parties to and became judgment debtors with regard to the underlying state court action such that Niagara, by agreeing to pay the entire settlement, did so without any determination as to the extent to which NCCC and the Board are responsible for Lombardo's injuries.  *Id.* at 29-30.  Defendants thus maintain a question of fact exists as to whether it was reasonable for the County to assume responsibility for the entire settlement amount.  *Id.* at 30.  In further support of summary judgment on this point, Plaintiff argues Defendants cannot question the reasonableness of the settlement because it waived the right to do so by refusing to participate in settlement negotiations, Plaintiff's Reply at 9, the record establishes the claims against NCCC and the Board were discontinued by stipulation during the trial, *id.* at 9-10, and as owner of the real property where the accident occurred, the County is the only party liable under § 241[6] and, as such, is the only party liable for payment of Lombardo's damages.  *Id.* at 10.

Defendants have not contested the reasonableness of the amount of the Settlement Agreement in moving for summary judgment; rather, Defendants made this argument in connection with Defendants' earlier motion to compel filed January 10, 2017 (Dkt. 37) ("motion to compel").  In a Decision and Order filed May 15, 2017 (Dkt. 52) ("D&O"), the undersigned denied Defendants' request to enforce a subpoena seeking factual information from Crosby regarding the reasonableness of the Settlement Agreement because the request lacked sufficient factual foundation.  D&O at 21.  In

particular, the undersigned determined that because both NCCC and the Board were no longer defendants to the underlying state court action on January 12, 2015, *i.e.*, the date of the State Court Decision by Justice Boniello, who found the County liable under § 241[6], which imposes a non-delegable duty upon the County as the owner of the real property where the accident occurred, the subsequent terms of the Settlement Agreement

> requiring payment by Niagara County alone establishes Defendants' duty (if such duty is the result of the instant action) to indemnify Niagara County as an additional insured under the [E/U Policy] without risk that such indemnity will include damages resulting from any wrongdoing by uninsured entities.

D&O at 20-21.

Defendants filed objections to the D&O, including the undersigned's determination that, based on the transcripts from the underlying state court action, including an oral stipulation made in open court by counsel for both Lombardo and Defendants during the underlying state court action, with Crosby acknowledging the County is the owner in fee of the land where the accident occurred, precluded further argument that the County was liable under § 241[6].  In affirming the D&O, District Judge Richard J. Arcara held such oral stipulation sufficiently binding under N.Y. Civ. Prac. L. & R. § 3217, such that the parties to the underlying state court action had agreed to drop NCCC and the Board from the action.  September 7, 2017 Decision and Order (Dkt. 70), at 8-9.  The determination that when the Settlement Agreement was reached, the County remained the only Defendant, such that only the County is liable for the amounts due under thereunder is now the law of the case.   Accordingly, all arguments regarding the reasonableness of the Settlement Agreement are DISMISSED as moot.

7.    **Interest**

As a further alternative should the District Judge disagree with the initial

recommendation that summary judgment be granted in Defendants' favor, the court also

addresses the date from which interest on any insurance award should be calculated.

Plaintiff maintains the County is entitled to recover interest from the date of the

settlement because that is the "ascertainable date" when Excelsior's payment would

have been due but for Excelsior's breaching its contractual obligation to indemnify

Plaintiff.  Plaintiff's Memorandum at 41.  In opposition, Defendants argue that pursuant

to N.Y. Civ. Prac. L. & R. 5001(b), any interest should run from the date of the County's

payments in accordance with the settlement agreement as until such payments are

made, Plaintiff cannot argue it has been deprived of such monies.  Defendants'

Response at 31-32.  Plaintiff asserts no further argument on this point.

As relevant, New York law provides that

> Interest shall be computed from the earliest ascertainable date the cause of
> action exists, except that interest upon damages incurred thereafter shall be
> computed from the date incurred.  Where such damages were incurred at various
> times, interest shall be computed upon each item from the date it was incurred or
> upon all of the damages from a single reasonable intermediate date.

N.Y. Civ. Prac. L. & R. 5001(b) (McKinney 1992).

As discussed, Plaintiff does not dispute the applicability of this statute to the calculation

of interest in the instant case.

Because the type of interest Plaintiff seeks here, *i.e.*, prejudgment, is awarded to

compensate for a deprivation of use of money, *see Matter of Aurecchione v. New York*

*State Div. of Human Rights*, 771 N.E.2d 231, 234 (N.Y. 2002) (purpose of an award of

prejudgment interest is to make whole the aggrieved party and represents the cost of

having the use of another person's money for a period of time), the County will not have been deprived of the use of any such money until and unless the County first pays out of its own funds any portion of the settlement amount.  Accordingly, any prejudgment interest payable to the County would be calculated based on when settlement amounts are paid to Lombardo from the County's own funds.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 79) should be DENIED; Defendants' Motion (Dkt. 78) should be GRANTED.  The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    January 3, 2019
          Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an**</u>

<u>**extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    January 3, 2019
Buffalo, New York